152 So.2d 767 (1963)
George P. SCUSSEL and Louise W. Scussel, his wife, and Charlie Luckie, Jr., Relators,
v.
Richard KELLY, Respondent.
No. 3942.
District Court of Appeal of Florida. Second District.
May 2, 1963.
*768 Dayton, Dayton & Luckie, Dade City, and T. Paine Kelly, Jr., of Macfarlane, Ferguson, Allison & Kelly, Tampa, for relators.
Richard W. Ervin, Atty. Gen., Tallahassee, Robert R. Crittenden, Asst. Atty. Gen., Lakeland, for respondent.
ALLEN, Judge.
Pursuant to a suggestion for writ of prohibition filed by relators Scussel and Luckie, this court issued a rule nisi directed to the Honorable Richard Kelly, Circuit Judge, Sixth Judicial Circuit, presiding in Dade City, Pasco County, which County, with Pinellas County, constitutes the Sixth Judicial Circuit of Florida. A motion to quash the rule has been filed by Judge Kelly, as has a return which is included in the brief filed in behalf of Judge Kelly by the Attorney General and Assistant Attorney General of the State of Florida.
The suggestion for the writ of prohibition requested that Judge Kelly be prohibited from proceeding any further in the case of State Road Department of Florida v. Aiken, et al., Law case #1753, pending in the Circuit Court in and for Pasco County, Florida, a case in which relators Scussel are parties and relator Luckie is their attorney of record, and also requested that Judge Kelly be prohibited from proceeding with three criminal contempt cases filed against relator Luckie as a result of his activity in attempting to secure disqualification of Judge Kelly in the Aiken case. The criminal contempt charges are predicated on Luckie's having filed three affidavits in support of a suggestion for disqualification prescribed by Fla. Stat. 38.10, F.S.A. (1961). One of these affidavits was his own and two were supporting affidavits. The affiant in one of the supporting affidavits, E.B. Larkin, had also been cited for contempt and his suggestion for prohibition, the rule issued, and return thereon form the crux of a companion case, Fla.App., 152 So.2d 783, consolidated with the principal case, No. 3942, for oral argument.
It is regrettable that we must detail in this opinion allegations that we would much prefer to delete because of the high position which the respondent, Judge Kelly, occupies and the unnecessary and unwarranted reflection that a case of this kind brings upon the entire judiciary and the Bar of Florida in the eyes of the public.
We shall deal first with that portion of the suggestion and consequent rule nisi which seeks to prohibit Judge Kelly from proceeding further in the State Road Department v. Aiken case. On March 18, 1963, relators George and Louise Scussel, parties-defendant in the Aiken case, then pending in Judge Kelly's court, filed in that court their suggestion for the disqualification of Judge Kelly. Their suggestion stated that they were represented by Mr. Charlie Luckie, Jr., of the law firm of Dayton, Dayton and Luckie of Dade City and that they believed that Judge Kelly was so biased against their counsel that they would be unable to obtain a fair and impartial trial of the issues involved in the cause.
It must be kept in mind at this point, particularly in view of the unfortunate effect of a case like this to reflect adversely on both the bench and Bar, that the party's allegations, made as a basis for the fear of a party or attorney that he will not *769 receive a fair trial, often do not mean that the judge is himself prejudiced. Such charges or allegations are most often based on a background of conduct or of various cases over which the judge presided which provides the basis for a party's fear that he would not receive a fair trial. It could often be the case that the moving party feels the judge will "lean over backwards" to keep from ruling against the other party because of the judge's fear that he might be considered prejudiced against the adverse party and the judge's inherent nature is such that he would try to be fair  thus perhaps unconsciously prejudicing the moving party. A similar situation often develops on the athletic field when the referee or umpire is called upon to perform between his home town or college team and a team from another city or college. In any event, the allegation of fear of prejudice, whether positive or negative, need only be reasonable and may well be, in actuality, ill-founded. This requirement of reasonableness, as distinct from conclusiveness, is demonstrated by the fact that the judge to whom the petition is directed has no right to pass on the truth or falsity of facts set forth in affidavits, but must promptly determine if the suggestion and affidavits are sufficient in terms of compliance with statutory procedure and, if their sufficiency is determined, promptly recuse himself. It must also be remembered that in detailing the facts set forth in the suggestion, we do not pass upon the truth or falsity of these facts, nor do we indulge in the presumption as to whether Judge Kelly is, or is not, prejudiced. The facts are set forth solely for the purpose of determining whether the suggestion and supporting affidavits state facts and reasons for the belief that the parties fear that they will not receive a fair trial on account of the prejudice of the judge. The facts stated are considered only in the light of the question as to whether or not they reveal a reasonable basis for the parties' fears or are frivolous and fanciful.
Attached to the suggestion of disqualification were the affidavits of Scussel and his wife and the affidavit of their attorney Luckie, the affidavits of two reputable citizens of the county who were not related to the defendants or their counsel and a certificate of good faith executed by the Scussels' counsel of record. Also appended were the suggestion of disqualification, affidavits, opinion and order of disqualification and response by counsel to the opinion and order of disqualification in the case of James T. Haymons v. T.L. Groover, d/b/a Safety Cab Co., Law No. 1607, a case formerly pending before Judge Kelly.
The essential basis for the fear of prejudice expressed in the Scussels' suggestion of disqualification is revealed in the appended affidavit of their attorney Luckie, who, after stating his beliefs that Judge Kelly was biased and prejudiced against him and his partner, that as a result their clients could not receive a fair trial and that Judge Kelly should disqualify himself in the cause, proceeded to allege the factual matters upon which his beliefs and fears were based.
Luckie first stated that he and his partner Dayton had, at an earlier time, filed a suggestion of disqualification against Judge Kelly in the case of Haymons v. Groover, Law Case 1607, as a result of which Judge Kelly entered an opinion and order of disqualification in which he apologized to the affiant and his partner for any statements which gave rise to the suggestion for disqualification and that Luckie and his partner had filed a response to that opinion and order wherein they accepted Judge Kelly's apology.
Affiant continued with statements that subsequent to that time the affiant and his law partner made a sincere effort to cooperate and work in harmony with Judge Kelly, but in spite of their efforts, it had not worked out. Judge Kelly had appointed Luckie to represent an indigent defendant, Willie Charles Hill who was indicted and tried for first degree murder in Pasco County. During that trial Judge Kelly improperly intervened by unnecessarily interrupting counsel in their arguments and addressing counsel *770 and the defendant in a controversial manner or tone. Affiant stated the following as remarks made by Judge Kelly during that trial:
"Mr. Luckie, aren't we in this position? This defendant has at least written out in his own hand a statement which clearly and concisely shows his guilt in this particular case. (R 363)."
"But what we are faced with is the fact that because he was illegally arrested, then because of  even though what he told is the truth, and he is guilty as sin, the fact is that he told the truth while under duress and he did not do so voluntarily, and the law is couched in such terms to protect the guilty as well as the innocent. Is that the proposition you're putting to the Court? (R 363-364)"
As further evidence of the circumstances in the Hill case, affiant states that in that case Judge Kelly insisted upon certain evidence (State's Exhibit No. 1) being admitted into evidence in spite of the fact that it was not proffered by the State's Attorney and despite the State's Attorney having announced to the Court that he was not sure that this piece of evidence, being a written confession, had been freely and voluntarily made.
Affiant then states that he, in conjunction with 18 other practicing attorneys in Pasco County, petitioned the State Senator and State Representative of Pasco County to pass a bill taking Pasco County out of the Sixth Judicial Circuit, putting the said county in the Fifth Judicial Circuit, and providing that Judge Kelly continue as a judge of the Sixth Judicial Circuit, which office he is now holding, and that Judge Kelly, upon hearing about the move by affiant and the other attorneys, called a newspaper and gave a statement to a reporter from the St. Petersburg Times denouncing the move by these attorneys as being a "straight gerrymandering by one political party" and said it could "destroy the non-partisan character of the court" and further denouncing the move as being inspired by democratic lawyers. Attached to Luckie's affidavit was a copy of the newspaper article setting forth the comments of Judge Kelly to the said newspaper reporter.
Affiant stated that on February 26th, 1963, Judge Kelly made a speech before the Women's Republican Club at Zephyr Hills, Florida, during which speech he mentioned Luckie by name and labeled the proposed judicial circuit change as "sinister" and an effort by those interested to select another judge against the will of the people. By reference to a matter in which he (Judge Kelly) was involved as a Federal prosecutor, he inferred that the persons behind the proposed circuit change would steal money from the people if it were not for him and his vigilance. A copy of the speech made by Judge Kelly was attached to Luckie's affidavit as Exhibit B.
Affiant stated that Judge Kelly violated Canon 28 of the Code of Ethics, 31 F.S.A. governing Judges in Florida, which prohibits partisan political activity by a judge.
The affidavit proceeded with allegations that on March 15, 1963, Judge Kelly, Luckie and other lawyers practicing in Pasco County, received notification from the State Senator that he was not going to introduce the proposed bill to take Pasco County out of the Sixth Judicial Circuit and make said county a part of the Fifth Judicial Circuit and that within approximately two hours from the time affiant received such notification, he received a telephone call from Judge Kelly who advised the affiant Luckie that he wished to see him and other attorneys at the courthouse in Dade City at 12:15 P.M. to discuss matters concerning the administration of the Circuit Court of Pasco County. Affiant Luckie stated that he advised Judge Kelly that he could see no useful purpose for such a meeting because those matters had previously been discussed, whereupon Judge Kelly stated to the affiant over the telephone that "I order you to appear before me at 12:15." Affiant stated that he then told *771 Judge Kelly that if that was the way he felt he had better put his order in writing because the matter in which he was ordering affiant to appear was not a disciplinary matter nor a matter involving Luckie's clients or any cause pending before the court. Affiant continued discussion of the incident, stating that at 12:16 P.M. Luckie was served with an Order signed by Judge Kelly directing Luckie to appear before the court in the courthouse, Dade City, Florida, in the circuit court room at 12:15 P.M. on March 15, 1963. A copy of the court order was attached, marked Exhibit C, and made a part of the affidavit. Luckie stated that when the order was served upon him he promptly went to the court room in the courthouse where the deputy sheriff who served the order from Judge Kelly sat directly behind Luckie. When Luckie asked the deputy sheriff (Billy Smith) if he was there to keep Luckie from leaving the court room, the deputy sheriff replied, "no comment." Affiant Luckie further discussed the foregoing order and stated that after they had entered the court room Judge Kelly then ordered them to come into his chambers.
Nearing the conclusion of his affidavit, affiant Luckie stated that Judge Kelly was advised by him on Thursday, March 14, 1963, that a suggestion of disqualification would be filed in connection with the Aiken case unless he voluntarily excused himself from the case, a request made in an earnest effort to avoid any further public controversy in this case, but that Judge Kelly refused the oral request to disqualify himself.
In Judge Kelly's remarks on February 26, 1963, before the Women's Republican Club, to which the affiant Luckie alluded and a copy of which is filed as an exhibit in this cause, Judge Kelly called attention to the attempt to have Pasco County taken out of the Sixth Judicial Circuit and included in the Fifth Judicial Circuit. He mentioned that he had had a discussion with Mr. Luckie and said he believed Mr. Luckie was prominent in the effort to change the alignment of the county. During his speech, or remarks, Judge Kelly called attention to the presence of a shorthand reporter and asked the reporter how he happened to be there. The reporter replied that he'd been asked to attend and report Judge Kelly's speech. When asked if he was being paid, the reporter replied that he was to send the bill to a man named Jim Larkin.
The gist of Judge Kelly's speech to the Women's Republican Club was in opposition to the proposed realignment of Pasco County. Much of the discussion was to the effect that the judiciary should be non-partisan and that he, Judge Kelly, was trying to be nonpartisan. We comment on this speech only insofar as certain portions are, in view of Judge Kelly's professed belief that Luckie was associated with the realignment proposal, facts upon which the Scussels and Luckie could base their fear that Judge Kelly was prejudiced against the attorney Luckie. For instance, the following paragraphs appear in the speech:
"But now why is it important that I be sent to Pinellas County? My home is here. I was raised here. Everything that I own is invested in an orange grove out here, and between what the cold has done to it and the fact that I am about ready to be shipped off to Pinellas County; and for what reason? In order to make way for a judge that will be hand-picked by a few anonymous people that you don't know; you will never be able to find out. The Governor will appoint him, and that will end all that, and you will have no control over it, none, no more control over that appointment than you have had over any judicial appointments that have been made in the past.
"So it just is a little hard to understand, but let's try to look a little bit further. Can this make any kind of sense?
"O.K. Here is what I believe. I can't guarantee this to you but I believe *772 this is true. I don't believe that these politicians can make me move out of my home county. I think they can conceivably  I don't believe this, but I think it is possible  that they can compel me to go to work in Pinellas County, but they can't make me leave my home.
"Now, if I work in Pinellas County and I live here, it is going to cost you, the taxpayers of this state, $40,000 over the next four years in the time that I will lose, the exhausting waste of sitting there for three hours a day driving that car. How would you like to have something that you were interested in and want to work hard at and then have to waste three hours every day driving back and forth, every day three hours, 15 hours a week; and that's what I am going to be up against, and why? Why $40,000 of your money? Why demoralize me in my work? Why? Why must your courts be Democratic? Why can't you have a Republican in office? They are non-partisan. The newspapers tell you they are non-partisan. They tell you they should be, and you believe them and you support the courts on that basis. Then why is all this necessary? Why must a few people of this county whose names I can't even find out, why must they select their own judge?
"It is sinister. It is sinister."
Judge Kelly then stated:
"But I want to tell you this. I intend to make this statement or similar statements in every public gathering that I can in this county until it's too late to do anything about it, and I challenge the people that are behind this bill, your representatives, anybody else that's going to do this, to come and stand up in the broad daylight and to have then announce to you, the public, why they are doing this."
Also appended as an exhibit in this cause was a newspaper article, written by a Tampa Tribune staff writer, concerning Judge Kelly's having ordered relator Luckie to attend a meeting with local attorneys. The article discusses Luckie's objection to attending the meeting and the written order compelling attendance which was served on Luckie by a law officer. The article stated that E.B. Larkin, a Dade City attorney, represented Luckie in this matter before the judge. Larkin stated, according to the newspaper, that the court had no authority to order Luckie to attend the meeting and that he objected to it. The article further mentioned that Luckie was one of the Pasco County attorneys who petitioned Senator Covington to introduce a bill which would place Pasco County in the Fifth Judicial Circuit and leave Kelly, the resident judge, in the Sixth Circuit.
As noted earlier, the suggestion of disqualification was supported by the affidavits of the Scussels annd Luckie and by two additional affidavits. The affidavit signed by Robert E. Clawson stated in part:
"5. That Affiant has read the Suggestion of Disqualification and Affidavit of Bias and Prejudice and the Affidavit of the Defendants, George P. Scussel and Louise W. Scussel, his wife, seeking the disqualification of Honorable Richard Kelly to hear said cause. Affiant believes that the facts stated as a basis for making the said affidavits are true and correct.
"6. That Affiant has personal knowledge of most of the matters contained in the Affidavit of Bias and Prejudice, signed by Charlie Luckie, Jr., counsel of record for the above mentioned Defendants.
"7. That Affiant has known the said Honorable Richard Kelly for ten years and that, in Affiant's opinion, the said Richard Kelly is possessed of a vindictive disposition and is unpredictable in his nature and Affiant believes that the said Honorable Richard Kelly is so biased and prejudiced against the said Charlie Luckie, Jr., as well as his law *773 partner, George C. Dayton, that the said defendants in the above styled cause will not be given a fair and impartial trial by him."
Mr. E.B. Larkin filed a similar affidavit.
As was also mentioned before, the suggestion for disqualification filed by the Scussels in the Aiken case referred to and included the record in the case of Haymons v. Groover, Law #1607, in which Judge Kelly had been disqualified on the basis of affidavits signed by Charlie Luckie, Jr., and George C. Dayton of the firm of Dayton, Dayton and Luckie. One of the supporting affidavits in that proceeding had also been signed by the attorney Robert E. Clawson and states, in part:
"6. That affiant knows of his own knowledge that during the campaign between the Honorable Richard Kelly and Honorable Orvil L. Dayton, Jr., many statements were made or published by the said Honorable Richard Kelly which were abusive and derogatory of the entire Dayton family which included George C. Dayton, Esquire.
"7. That affiant has known the said Honorable Richard Kelly for eight years and that, in affiant's opinion, said Honorable Richard Kelly is possessed of a vindictive disposition and is given to emotional outbursts and rages and affiant believes that said Honorable Richard Kelly is so biased and prejudiced against the said George C. Dayton, Esquire, and Charlie Luckie, Jr., Esquire, that the defendant herein named in the entitled cause will not be given a fair and impartial trial by him."
The other supporting affidavit was signed by one C.G. McGavern who gave his profession to be that of minister, and which affidavit followed that of Clawson in detail.
The affidavits of Luckie and Dayton filed in this the earlier case, stated:
"1. That these affiants heretofore filled a suggestion of disqualification against the said Judge Richard Kelly in the case of State Road Department of Florida, et al., petitioners, v. Hackney Simpson, et al., defendants being Law No. 1544 now pending in this court, and that in connection with said suggestion of disqualification Judge Kelly evidenced his bias and prejudice against these affiants in the following particulars during a hearing in connection with the said cause on Thursday, February 2, 1961, to-wit:
"(a) Judge Kelly denied the suggestion of disqualification filed in said cause without giving these affiants an opportunity to be heard prior to his ruling.
"(b) Judge Kelly disqualified himself from presiding in said cause on the grounds that there was a possible conflict of interest based upon a suggestion of disqualification on such grounds filed by the attorney for the petitioners in said cause but denied the suggestion of disqualification filed by these affiants in said cause on behalf of their clients, although such suggestion of disqualification filed by these affiants contained the same grounds as the suggestion of disqualification filed by the petitioners, State Road Department of Florida, et al. In making said ruling Judge Kelly attempted to justify the incompatibility of his ruling by stating in effect that if he were disqualified on account of interest, such interest would work to the detriment of petitioners in said cause but could only be beneficial to clients represented in said cause by these affiants. In doing so Judge Kelly ignored the obvious fact that in a condemnation proceeding a Judge could very easily and in a number of ways favor one defendant over the other and also that a Judge should be impartial as to all parties to any litigation over which he presides."
This affidavit also gave a good deal of the background of the race for Circuit Judge which Judge Kelly made against *774 Judge Orvil L. Dayton, Jr., who is a brother of George C. Dayton. The affidavit went into some detail as to various things that were said and done in this race. We see no need of further commenting on the background stated in this affidavit.
In the Haymons case, Judge Kelly filed an opinion and order of disqualification in which he said:
"This suggestion of disqualification sets forth statements and conduct on my part during the recent political campaign which the firm of Dayton, Dayton & Luckie has construed to be hostile and against the entire Dayton family. I can see why they might consider some of the statements made by me to be of a hostile and prejudicial nature, and I therefore offer them my sincere apology for this unintended affront. I do not have a hostile attitude toward the Dayton family. I am not prejudiced against any of them, and this unfortunate interpretation of my statements does not reflect my attitude either personally or in my official capacity. The Dayton family has served Pasco County for more than half a century in various governmental capacities. Some of the offices which they have held were by appointment and others by contested elections. I have no reason to believe that their service to the county has been other than honorable. However, it is my opinion that it is not good policy for any one group or family to stay in public office too long regardless of other considerations, so my attack was not aimed at the Dayton family or at any other family but at a policy which I personally consider to be wrong.
"I have known Judge Dayton, Sr., George Dayton and Charlie Luckie for a number of years, and they have always treated me with consideration and respect, and I have found them to be experienced and capable members of the Bar. I certainly do not want to be a party to any action which would hurt them personally or professionally.
"This unfortunate circumstance has stemmed entirely from the rigors of the recent highly contested political race, and I had no intention then nor do I have any intention at this time to do anything or say anything prejudicial to the Dayton family or the law firm of Dayton, Dayton & Luckie. I have no prejudice or bias against these attorneys. It is my desire to reconcile this misunderstanding which has been caused in part at least by misconstrued remarks made by me during the campaign. It is my desire to serve them and all other people who have business before the court faithfully and honestly to the best of my ability.
"In consideration whereof I hereby disqualify myself from hearing any further matters or conducting any further proceedings in connection with the above styled cause and request the presiding Judge of the Sixth Judicial Circuit of Florida to appoint another Judge to hear matters which may be involved in this suit.
"DONE and ORDERED in Chambers at Dade City, Florida, this 15th day of March, A.D., 1961."
To Judge Kelly's opinion and disqualification order, the law firm of Dayton, Dayton & Luckie filed what they styled "Response of Counsel to Opinion and Order of Disqualification" which reads as follows:
"We wish to express our appreciation to Judge Kelly for his remarks contained in his Opinion and Order of Disqualification. We also accept his apology and explanation as being sincere and we, too, are desirous of affecting a reconciliation and we sincerely hope that we will be able to utilize Judge Kelly's services in the future. We feel that the explanation and apology of Judge. Kelly should allay the fears of any of our future or present *775 clients so that they will not insist upon any effort on our part to disqualify Judge Kelly. For our part, we will make a determined and sincere effort to work in harmony and cooperate with Judge Kelly in future matters which may come before him."
It is very regrettable that the apparent good intentions of Judge Kelly and the law firm of Dayton, Dayton & Luckie, as evidenced by the foregoing order of disqualification of Judge Kelly and response thereto failed to effect a permanent reconciliation. We pause here to remark that the mere fact that Judge Kelly ran as a Republican and defeated Judge Dayton, who was a Democrat, should cause no more controversy that if both of the men in this race were Democrats or both Republicans. The travesty of the whole situation results when judges, who are supposed to stay out of politics, get involved in a political campaign. We take judicial notice of the fact that in all types of political campaigns mean and vicious things are said by and against candidates on both sides of the political fence which they regret afterwards but wounds are made that never heal.
Thus, with the background of the earlier disqualification, the Scussels on March 18th suggested disqualification in the Aiken case, supporting their suggestion with the affidavits and exhibits hereinbefore discussed. The trial in that case was to begin on March 25th. A few days later, without taking any affirmative action on the suggestion, Judge Kelly continued the cause.
On March 26th, some eight days after the suggestion was filed, and with no adjudication on the suggestion as yet made, Luckie, affiant and attorney in the disqualification proceeding, was served with three citations for criminal contempt based on his having published and procured affidavits in the disqualification proceeding. These citations were returnable at 2:00 P.M., March 29th, 3:00 P.M., March 28th, and 4:00 P.M., March 28th, respectively.
On March 27th, Luckie was served with a notice of hearing filed by Judge Kelly to the effect that a hearing on the Scussels' suggestion for disqualification in the Aiken case would be held at 11:00 A.M., March 29th, 1963.
It is unfortunate that on the record, the contempt citations issued by Judge Kelly against the attorneys who were seeking to disqualify him were issued before the judge had ruled on the suggestion of disqualification and that two of these were returnable prior to the hearing on disqualification. Thus, Luckie was placed in the embarrassing position in proceeding on the disqualification suggestion for his clients of having to face, on the prior day and the day of hearing, three criminal contempt citations issued against him.
Confronted with the dilemma presented by the judge's unexplained delay in determining the sufficiency of the suggestion of disqualification and his issuing contempt citations based on the affidavits supporting the suggestion, a dilemma aggravated, no doubt by the fear of prejudice which had been the basis of the entire matter, relators sought a writ of prohibition. It is to the propriety of the writ in prohibiting Judge Kelly's proceeding in the Aiken case that our attention must be first directed.
Florida Statute 38.10, F.S.A. provides that:
"Whenever a party to any action or proceeding, shall make and file an affidavit that he fears that he will not receive a fair trial in the court where the suit is pending on account of the prejudice of the judge of said court against the applicant, or in favor of the adverse party, such judge shall proceed no further therein, but another judge shall be designated in the matter prescribed by the laws of this state for the substitution of judges for the trial of causes where the presiding judge is disqualified. Every such affidavit shall state the facts and the reasons for the belief that any such bias or prejudice *776 exists, and such affidavit shall be filed not less than ten days before the beginning of the term of court, or good cause shown for the failure to so file same within such time. Any such affidavit so filed shall be accompanied by a certificate of counsel of record that such affidavit and application are made in good faith, and the facts stated as a basis for making the said affidavit shall be supported in substance by affidavit of at least two reputable citizens of the county not of kin to defendant or counsel for the defendant; * * *."
It has been held that the prejudice of a judge toward the counsel for a party is, in effect, a prejudice against the party insofar as disqualifying the judge is concerned. See Ginsberg v. Holt, Fla. 1956, 86 So.2d 650; Raybon v. Burnette, Fla.App. 1961, 135 So.2d 228.
Thus, upon filing of the suggestion of disqualification based on bias and prejudice against an attorney in the cause relators brought themselves within the ambit of the aforementioned statute and the respondent judge was under an affirmative duty to proceed only insofar as was permissive under the statute. The procedure the judge was constrained to follow has been well established in the decisions of the Supreme Court of Florida.
In Dickenson v. Parks, 1932, 104 Fla. 577, 140 So. 459, Dickenson, the defendant in a pending suit, moved to disqualify respondent Judge Parks, alleging that she feared she could not receive a fair trial before Parks because of his prejudice in favor of the opposing party and prejudice against her. The supporting affidavit alleged, as facts supporting the motion, that the pending cause would turn on the testimony of a close friend and former partner of Judge Parks, in whose favor the judge was biased and prejudiced and that in former proceedings the judge had admitted prejudice against the attorney for and brother of the affiant Dickenson. Affiant also explained that the motion was not filed 10 days before the court's term because the suit was not filed in time to permit said motion.
The judge overruled the motion to disqualify him and a writ of prohibition was obtained. After return, the rule was made absolute.
In the decision on the writ, the Court said:
"It is settled law in this state that prohibition may be an appropriate remedy to prevent judicial action, when the judge is disqualified, as well as when the judge is without jurisdiction to act in the cause. State ex rel. Reynolds v. White, 40 Fla. 297, 24 So. 160; State ex rel. Burr v. Whitney, 66 Fla. 24, 63 So. 299; State ex rel. Bank of America v. Rowe, 96 Fla. 277, 118 So. 5."
They then held that the motion was legally sufficient, having stated reasonable grounds for fear of prejudice. Concluding, the Court said:
"It was proper for Judge Parks to examine the affidavit for the purpose of determining whether or not it met all the requirements of the statute and to determine its legal sufficiency. He has no right to pass upon the truth or falsity of the facts alleged therein; neither can he adjudicate the question of his disqualification. If he finds the affidavit legally sufficient, he is left with no alternative but to retire from the cause, as directed by the statute. Berger et al. v. United States, 255 U.S. 22, 41 S.Ct. 230, 65 L.Ed. 481; Suarez v. State, 95 Fla. 42, 115 So. 519.
"In the Berger Case, the Supreme Court of the United States considered and construed a statute very similar to the one involved in this case, and it was there held that the facts alleged in the affidavit would be sufficient if alleged on information and belief. If the facts revealed have relation to the attitude of mind of the judge to the defendant in the inferior court, and are not *777 frivolous or fanciful, they are sufficient to meet the command of the statute."
Similarly, in the case of Peacock v. Frederick, 1936, 125 Fla. 414, 170 So. 129, which was an original proceeding by J.E. Peacock for a writ of prohibition directed to the Honorable Herbert B. Frederick, as Judge of the Seventh Judicial Circuit in and for Volusia County, Florida, the Supreme Court, in a Per Curiam opinion, said:
"Return to the rule nisi in prohibition having been made, and it appearing therefrom that petitioner has duly pursued the procedure provided for in section 4341, C.G.L., section 2674, R.G.S., for the disqualification of respondent to act as judge in the cause described in the rule nisi heretofore issued, it is thereupon ordered, on authority of Dickenson v. Parks, 104 Fla. 577, 140 So. 459, text, p. 462, that the writ of prohibition absolute prohibiting the respondent, H.B. Frederick, as judge of the circuit court of the Seventh judicial circuit in and for Volusia county, from further acting or making any order or decree other than an order of disqualification in the cause referred to and described in the rule nisi heretofore issued in this proceeding be granted.
"Prohibition awarded."
Respondent in this cause does not question the applicability of the rule enunciated in the Dickenson case, but argues that prohibition does not properly lie since, as yet he has not acted on the suggestion for prohibition. Without discussing, at this point, the possible effect of the peculiar phrasing of the contempt citations as indicating an indirect but nonetheless real adjudication of the sufficiency of the suggestion, we reject respondent's argument.
In the average case in which an application on statutory grounds for disqualifying a judge has been filed, the judge looks over the papers and, if the statutory requirements have been complied with, enters his disqualification. Yet, in this case, eight days after the papers had been filed, the judge still had not acted on the suggestion for disqualification and had, in addition thereto, filed criminal contempt charges against the attorney of record for the parties and against another attorney who had filed a supporting affidavit in the case.
We are of the view, after carefully examining the suggestion for disqualification, that it would be in the best interests of all concerned for this court to issue its order prohibiting Judge Kelly from proceeding further in the case of State Road Department of Florida v. Aiken, et al., insofar as it affects the Scussels, other than to enter his order disqualifying himself, and we so order.
We now proceed to discuss the contempt citations involving the relator Luckie. These citations allege contempt in executing, publishing and procuring the affidavits filed in the disqualification proceeding hereinbefore discussed.
The first case, No. 1173, required Luckie to show cause before Judge Kelly why he should not be adjudged in contempt for having executed, published and filed in the records of that court his affidavit as to bias and prejudice in support of the suggestion for disqualification filed in the Aiken case. The order stated:
"* * * This affidavit contained uncalled for conclusions and assertions of the affiant demonstrating affiant's contempt of this Court and the undersigned Judge of this Court in his judicial capacity. Further, such conclusions and assertions have a tendency to impede, embarrass, and obstruct this Court in the administration of justice and reflect upon the judicial integrity and competency of this Court and the undersigned Judge of this Court and such conclusions are against the authority and dignity of this Court and the undersigned Judge acting judicially so as to reasonably result in bringing this Court and the undersigned Judge of this *778 Court into contempt, disrespect, and shame in the public eye.
"In order that the said Charlie Luckie, Jr., may be specifically advised as to wherein said affidavit is false and contemptuous the following specifications are made:
"1) In paragraph 2(a) the said Charlie Luckie Jr. opined that the undersigned Judge of this Court `Flagrantly violated Canon 15 of the Code of Ethics' stating that this was done by `improperly intervening in the trial' and by `unnecessarily interrupting counsel in their arguments' and by `envencing (sic) a severe unwarranted attitude towards witnesses' and by `addressing counsel and the Defendant in a controversial manner or tone.' These assertions are such as to reasonably result in bringing this Court and the undersigned Judge of this Court into contempt, disrespect, and shame in the public eye and are not facts, but are mere conclusions on the part of the relator."
The contempt citation continues with assertions by the judge similar, in effect, to the assertions above mentioned.
Discussing the phrasing of the citations, the relators in their reply brief, state:
"In view of the findings contained in the contempt citations and the judicial determination that contempt does exist, no useful purpose would be served by the trial court in conducting any further hearing in the matter except to determine the sentence to be imposed. The question of contempt has been prejudged. The matters specified in the contempt citations are not legally contemptuous and, even if they are contemptuous, are privileged under authority of the case of Giblin v. State (Fla.) [158 Fla. 490] 29 So.2d 18. If the respondent Circuit Judge has the authority to cite the petitioner Luckie for contempt purely on the basis of matters contained in the suggestion of disqualification, then there is no privilege and the Circuit Judge will be allowed to over rule the Supreme Court in the case of Giblin v. State."
A study of each of the three contempt citations leaves doubt whether or not the judge was definitely determining that Luckie was guilty of contempt or was, instead, issuing a rule setting forth the matters over which he should determine upon a hearing that Luckie was guilty of contempt. However, the point need not be extensively discussed.
The return to the suggestion for writ of prohibition and the brief in support thereof, in effect state that Judge Kelly has not, as aforementioned, acted upon the suggestion for disqualification and similarly has not made any ruling as to the contempt proceedings other than a rule to show cause why petitioner Luckie should not be held in contempt of respondent's court. The return then urges that the application for prohibition is premature. The respondent cites and relies upon the case of State ex rel. McGregor v. Peacock, 1934, 113 Fla. 816, 152 So. 616, in which an attorney was cited for contempt allegedly committed in a proceeding to disqualify a county judge. In denying the application for prohibition and quashing the rule nisi, the Supreme Court stated:
"(1) * * * the rule nisi in prohibition should be quashed, on the ground that, under section 4161, Comp.Gen. Laws, 2534, R.G.S., the county judge has jurisdiction to determine in the first instance whether or not the acts set forth in the citation for contempt do, or do not, constitute a contempt under the circumstances alleged. If the county judge should exceed his powers in the premises and adjudge petitioner guilty of a contempt because of matters and things charged and shown which are, in law, no basis for a contempt adjudication, an appropriate remedy in due form of law exists for the redress of any palpable error or abuse which *779 may be made to appear, either as to law or fact. Baumgartner v. Joughin, 105 Fla. 335, 141 So. 185; Id., 107 Fla. 858, 143 So. 436; Wilson v. Joughin, 105 Fla. 353, 141 So. 182; State ex rel. Brooks v. Freeland, Circuit Judge, 103 Fla. 663, 138 So. 27."
The Supreme Court then noted that:
"(3, 4) * * * even in cases of proceedings to invoke the disqualification of a judge, the power to punish for contempts exists where there is such uncalled for acts or wrongful conduct as amounts to an actual and direct obstruction to, or interference with, the administration of justice, and it is only with erroneous or abusive exercises of such power to punish for contempt that this court can be concerned when properly called on to grant relief."
Discussing the same case, relators' reply brief states:
"In the case of State [ex rel. McGregor] v. Peacock, 113 Fla. 816, 152 So. 616, the Supreme Court of Florida stated, in effect, that prohibition will lie to restrain contempt proceedings in some circumstances. The court stated in that case:
"`Judicial wisdom and the experiences of the past would seem to demand that the extraordinary powers given to courts to punish for contempts be not used except to prevent actual and direct obstruction of, or interference with, the administration of justice, by the acts of attorneys at law in the manner or means used to present their controversies in the courts.
"`This is especially true of cases where attorneys have felt it their duty to invoke the provisions of our statutes allowing a challenge to be interposed against judges on the ground of their alleged prejudice. In such cases attorneys at law, when acting in good faith, should not be unduly embarrassed in the performance of their official responsibilities by being subject to an atmosphere of threatened punishment for contempt that may make the attorneys' position before the court of being psychologically overawed.'
"The Supreme Court held in the Peacock case that even in connection with disqualification proceedings a Circuit Judge has power to punish for contempt and refuse to issue a writ of prohibition. The opinion of the court does not disclose the facts of the case, but the record in the Peacock case shows that the alleged contemptuous conduct of the attorney involved the procurement by the attorney of supporting affidavits of bias and prejudice under false pretenses. The attorney represented to the disinterested citizens who made supporting affidavits that the affidavits were being obtained in order to get the bond of the attorney's client reduced. The attorney was not charged with contempt for matters contained in the affidavits but for his misconduct in the manner in which the affidavits were obtained. If the situation had been the same in that case as it is in the instant case, indications are that the writ of prohibition would have been issued."
We have examined the record in the Peacock case and note that in the case the parties who signed the affidavits stated that they signed them not for the purpose of disqualifying the judge but because they were told that the bonds of the defendant would be reduced if they would sign the affidavits. The record in the Peacock case shows that the State summoned before it the signers of the affidavits to the application to disqualify, suggesting that the affidavits had been improperly obtained. C.W. Tate and E.M. Rish appeared and testified, over the objection of the defendant. These witnesses testified, in effect, that the affidavits that they signed were for the sole purpose of having the bond reduced and that they would not be used unless the judge refused to reduce the bond. Tate further testified that at the time he signed these affidavits he *780 did not have any intention or desire to sign an affidavit disqualifying the judge from a trial in the cause, and further that he knew of no reason that the judge was prejudiced against either of the defendants. He also said at the time he signed the second affidavit he did not read it because he did not have his glasses.
The return to the alternative writ of prohibition in the Peacock case claimed that the affidavits and the signatures of Tate and Rish were procured through fraud and misrepresentation on the part of counsel and were obtained without disclosing the purpose for which said affidavits could be used. In light of this and the record substantiating it, the decision of the Supreme Court quashing the rule in prohibition is readily understandable. We think, however, that the decision in that case did not and was not meant to absolutely proscribe a writ of prohibition on entirely different facts.
In the case of State ex rel. Gary v. Davis, 1922, 83 Fla. 422, 91 So. 267, the Supreme Court of Florida held that the extraordinary remedy of prohibition may be invoked to prevent a trial judge from proceeding with a matter of contempt where it was shown that the trial judge was exceeding his judicial power.
Recently, in State ex rel. Hill v. Hearn, Fla. 1957, 99 So.2d 231, the Supreme Court explained the decision in the Gary case as follows:
"* * * We there held that prohibition would lie to prevent a contempt proceeding for alleged violation of an order of the trial judge which had been entered without notice to the alleged offending party. The case is not controlling because there no valid order was entered. The order which was alleged to have been violated had been entered without notice to the offending party and therefore in violation of the orderly requirements of due process. * * *"
Accordingly, it appears settled that prohibition can be invoked when the very basis of the contempt charge is an invalid one and the proceeding is in violation of the requirements of due process. The usual explanation being that in those cases the judge is exceeding his judicial power. Before further discussion of this point, however, a second prerequisite to the issuance of prohibition should be considered.
In 136 A.L.R. 715, there appears an excellent annotation on the topic "Other remedies as adequate or inadequate for purposes of an application for a writ of prohibition against contempt proceedings." Under Title I. Scope and introduction, page 715, the following appears:
"One of the commonly raised objections to the issuance of a writ of prohibition to prevent a court from proceeding further in a contempt matter is that the petitioner has other adequate remedies, by way of appeal or otherwise, under the rule that prohibition, being an extraordinary writ, usually cannot be invoked when the ordinary remedies provided by law are available and are complete and adequate. This annotation reviews the cases wherein the courts, in passing upon an application for prohibition against contempt proceedings, have dealt with the matter of the adequacy of other remedies, it being particularly endeavored herein to inquire into the various factors that have been considered as underlying or contributing to the adequacy or inadequacy of the other remedy."
Again, in the above annotation, page 719 under Title II. Determination of adequacy is the following:
"As said in 22 RCL 11, Prohibition, § 9: `There is no general rule by which the adequacy or inadequacy of a remedy can be ascertained, but the question is one to be determined on the facts of each particular case.'
"The question for determination, when an application for prohibition against contempt proceedings is resisted upon the ground that there is another *781 adequate remedy, would properly seem to be, not whether the other remedy is adequate generally, but whether, in view of the precise circumstances in which the petitioner for prohibition finds himself, the other remedy is adequate in the particular instance.
"The guiding principle is succinctly expressed in Brown v. Superior Ct. (1929; CalApp) 275 P 811, in these words: `Whether a petitioner for a writ of prohibition has a plain, speedy, and adequate remedy in the ordinary course of law is a question which must be determined in each instance in the light of all the facts and circumstances of the particular case.'"
In the case of State ex rel. Atty. Gen. v. Circuit Ct., 1897, 97 Wis. 1, 72 N.W. 193, 38 L.R.A. 554, 65 Am.St.Rep. 90, it was held that prohibition was a proper remedy where the defendants had been cited to show cause why they should not be punished as for a contempt for publishing certain newspaper articles, publication of which did not, in fact, constitute a criminal contempt. The Court said:
"We do not think that in a case like the present, where immediate imprisonment was threatened, and about to be inflicted, either writ of error or habeas corpus can be said to be an adequate remedy. In either case the trial must have been concluded, and sentence imposed, before the writ could issue, and in the case of habeas corpus the imprisonment must have actually begun. There certainly is grave doubt whether certiorari would lie in any event. * * In view of these considerations, it seems certain that neither of the last-named writs would afford an adequate remedy, even conceding that they would be applicable."
In Williams v. Howard, 1937, 270 Ky. 728, 110 S.W.2d 661, the Court held that an attorney charged with contempt based upon his filing of an affidavit asking that the judge vacate the bench and alleging facts tending to show that the judge was biased in favor of the opposing parties to the action, had no adequate remedy by appeal and would suffer great and irreparable injury unless prohibition was granted.
Similarly, in State ex rel. O'Connor v. District Court, 1935, 219 Iowa 1165, 260 N.W. 73, 99 A.L.R. 967, the Supreme Court of Iowa, in discussing the question of whether or not the petitioners had an adequate remedy, other than prohibition, said:
"Objection is made that, even though the case might otherwise properly be one for the issuance of a writ of prohibition, such writ will not issue in this case because the petitioners have an adequate remedy either by writ of certiorari or by appeal from any judgment that might be entered in the district court. While this contention is in accord with the general rule, it should be noted that such rule has reference to a remedy that is not only available, but also adequate. As stated in 50 C.J. 686: `The right to prohibition is defeated, not by the existence, but by the adequacy, of the remedy by appeal. Prohibition is properly granted if the remedy by appeal is inadequate.' * * * In 50 C.J. 683, it is said: `Prohibition may issue notwithstanding another remedy for the grievance complained of is available if such other remedy would not afford complete and adequate relief. To be adequate the concurrent remedy must be sufficient to afford the relief the case demands. While it has been asserted that prohibition will be granted where the remedy available is insufficient to prevent immediate injury or hardship to the party aggrieved, particularly in criminal cases, there is no general rule by which the adequacy or inadequacy of a remedy can be ascertained. Whether a remedy is adequate or not is a question resting within the sound discretion of the court to which application for relief is made, and is to be determined on the facts of each particular case. The court may properly consider the *782 expense involved in the prosecution of other remedies, or the delay or inconvenience incident thereto.' That the writ of prohibition may issue notwithstanding the existence of another adequate remedy, see 50 C.J. 682, and cases cited. * * *"
The often inadequacy of habeas corpus as compared to prohibition in the cases of contempt, we think is demonstrated by comparison of the cases of State ex rel. Giblin v. Sullivan, 1946, 157 Fla. 496, 26 So.2d 509, and Giblin v. State, 1947, 158 Fla. 490, 29 So.2d 18. In the first case cited, the petitioner sought habeas corpus after an adjudication of contempt on facts very similar to those at hand. Confined to the pleadings and record proper on habeas corpus, the Supreme Court determined that the statements upon which contempt was predicated were not privileged, although the writ was granted for a violation of due process. Later, in the second case cited, the contempt proceedings came before the Court on appeal and the very statements not found to have been privileged when presented in the context of habeas corpus, were found to be privileged.
Explaining this apparent inconsistency, the Court, in the latter case, commented:
"* * * in this case we have different pleadings with a record containing the appellant's side of the case whereas in the habeas corpus case appellant had no pleadings or evidence. * * *
* * * * * *
"The complete record now before us makes a different case from that shown in the habeas corpus case. * * *"
It is thus apparent that notwithstanding the availability of habeas corpus, a lawyer acting within the area of absolute privilege can be adjudicated in contempt and be without the speedy relief such a patently invalid adjudication demands.
We pause here to reflect whether due process would be accorded the relator Luckie under the factual situation that exists in this case. We have determined that Judge Kelly should proceed no further in the case in which the suggestion of disqualification has been filed because the record is sufficient to show disqualification because of the fear of Judge Kelly's prejudice against Charlie Luckie, Jr. Now, should we deny prohibition to relator Luckie in the three criminal contempt cases against him, these cases would go back to the very judge who is being disqualified in the principal case because the parties fear he is prejudiced against Luckie.
In addition, we note herein that, in line with the Supreme Court's decision in Giblin v. State, 1947, 158 Fla. 490, 29 So.2d 18, the statements made in Luckie's affidavit are privileged and do not, and cannot, constitute contempt. We have noticed with interest that in the Giblin case the statements made against the trial judge for which Vincent C. Giblin was held in contempt by the trial judge, charge matters much worse than the charges made against Judge Kelly in this case.
Since, on the facts in this case, a writ of prohibition alone can prevent relator Luckie from being cited for contempt on the basis of acts which apparently cannot, under the law of this State, constitute contempt and since a writ of prohibition alone can prevent Luckie from being judged on the contempt charges by a judge who, under the laws of this State, can reasonably be believed to be prejudiced and biased against Luckie, we are of the view, on these and other facts of this case, that relator has no other adequate remedy.
There remains now the question as to whether the contempt proceedings are such as to exceed the judicial power. As noted earlier, the general rule that prohibition will not issue when the lower court had in personam jurisdiction in a contempt matter is subject to the exception that the writ will issue to prohibit further proceedings when the predicate for contempt is invalid. State ex rel. Gary v. Davis, supra. The invalidity of the basis of the contempt proceeding *783 may turn on a lack of jurisdiction to enter an order violation of which is cited for contempt, or may arise from violation of due process in entering the order. In either case, the contempt proceeding may be in excess of jurisdiction.
With respect to due process in the instant case, we earlier alluded to the serious question and doubt concerning the phrasing of the citations as indicating a predetermination of contempt. We also have discussed the more significant circumstance that the citations are returnable before a judge disqualified in the principal cause on the basis of bias and prejudice against Luckie. These unfortunate circumstances and the further circumstance occasioned by the apparent factor of the affidavits being privileged and thus not possibly contemptuous, indicate, we think, an excess of judicial power. We are of the view then that when a judge, who is disqualified for prejudice toward an attorney, cites the attorney for contempt by reason of privileged acts, the judge exceeds his jurisdiction and can be prohibited from proceeding further.
Our Supreme Court, in Miami Retreat Foundation v. Holt, Fla. 1950, 48 So.2d 833, page 836, said, at the conclusion of the opinion:
"We have carefully reviewed the conclusions of the respective parties and find the supporting affidavits of two reliable citizens, as well as the certificate of counsel, attached to the petition in proper form. The inferences drawn from the language used by the respondent indicates fixed views as to the merits of the case which was the subject matter of the law suit. It is our conclusion that the petition presents a case of prejudice prohibited by the provisions of the cited statute and it was the duty of the respondent upon its presentation to him to proceed no further in the cause. See State ex rel. LaRussa v. Himes, 144 Fla. 145, 197 So. 762; State ex rel. Brown v. Dewell, 131 Fla. 566, 179 So. 695 [115 A.L.R. 857]; Dickenson v. Parks, 104 Fla. 577, 140 So. 459, and similar cases. It therefore follows that a writ in prohibition should issue as prayed for in the suggestion in prohibition."
We conclude that, under the factual situation expressed in this case, we should prohibit the trial judge from proceeding further in the principal case, except to disqualify himself, and from proceeding further in the contempt cases. We do this because of the unusual factual situation in this case hereinabove noted and do not lay this down as a general rule to be followed. As we have stated above, determination of whether an adequate remedy by means of appeal, habeas corpus, or any other remedy exists must be determined from the factual situation in each individual case.
It therefore follows that a writ in prohibition should issue as prayed for in the suggestion in prohibition.
SHANNON, C.J., and SMITH, J., concur.