**Virginia BLUE, Individually, and on behalf of all others similarly situated, Plaintiff,**

v.

**The Honorable P. B. REVELS, Circuit Judge of Putnam County, and Paul Hege, in his capacity as Chairman of the Bi-Racial Committee, Defendants.**

**No. 77–874–Civ–J–S.**

United States District Court, M. D. Florida, Jacksonville Division.

Dec. 2, 1977.

Linsey Moore, William Roberts, Jr., Johnson, Moore & Roberts, Jacksonville, Fla., for plaintiff.

No appearance for defendants.

## OPINION AND ORDER

CHARLES R. SCOTT, District Judge.

Plaintiff seeks a temporary restraining order from the Court pursuant to Fed.R. Civ.P. 65 and local rule 4.05. The Court's jurisdiction is invoked under 28 U.S.C. § 1343, and plaintiff's cause of action is alleged under 42 U.S.C. § 1983.

## FACTS

Briefly, the facts of this case as presented in the complaint and motion for a temporary restraining order are as follows. In late October or early November, 1977, one of plaintiff's sons was disciplined corporally at the high school in Palatka, Florida. Plaintiff, and other members of the black community in Palatka, met at the Bethel AME Church on November 3, 1977 to demonstrate their opposition to what they believe is unfair and brutally abusive treatment of black students by local school officials. During that meeting, a copy of a 1963 injunction, issued by defendant, the Honorable P. B. Revels, judge of the Sev-

enth Circuit Court of Putnam County, Florida, was served upon plaintiff.

The 1963 injunction by Judge Revels, was premissed upon his finding of "racial difficulties" in Putnam County, in 1963, together with the finding that such "difficulties" were "increasing in seriousness and violence." The injunction created a "bi-racial committee" within the county to "consider all aspects of any racial problem, discrimination, denial of legal rights or unfair treatment," and to take conciliatory steps to ameliorate the problems and reduce racial tensions. The bi-racial committee was ordered to meet regularly and was authorized to promulgate rules and regulations for its operation. The literal restraining effect of the injunction, however, was that "all persons" were

. . . restrained and enjoined from committing any act or participating in any action which will disturb the peace and tranquility of the county or that would tend to intimidate, incite or inflame races and citizens each against the other.

On November 3, 1977, Judge Revels issued an order to plaintiff, "and those in concert with her," to show cause on a date certain why they should not be held in contempt of the 1963 injunction. The hearing on the order to show cause concerning contempt is set for Monday, December 5, 1977. Additionally, the November 3 order to show cause contained an ancillary injunction against plaintiff "and those acting in concert with [her]" to "cease and dissent [sic] from doing or saying anything that will create hostility and further disturb the peace and tranquility of the people of this City and County." The effect of the ancillary injunction appears to be to maintain the status quo ante pending a hearing on the order to show cause regarding contempt of the 1963 injunction.

Plaintiff and other members of the black community again met at the church on November 11, 1977. During that meeting city police and county sheriff's deputies repeatedly drove around the church. Another one of plaintiff's sons applied for a permit

to demonstrate peacefully on behalf of the Southern Christian Leadership Conference ("SCLC"), on November 25, 1977. The permit application was denied. After denial of the permit application, plaintiff and others held a peaceful demonstration near the high school in Palatka. At that time, Putnam County Sheriff's deputies again served a copy of the 1963 injunction, this time upon plaintiff's son who had sought the permit for SCLC.

On Wednesday, November 30, 1977, at direction from SCLC officials, plaintiff and others decided to hold a peaceful march and demonstration on Saturday, December 3, 1977. More than 500 people are expected to participate. The march would be along the sidewalk from the northwest region of Palatka to the courthouse, without impeding traffic in the streets.

Plaintiff seeks a temporary restraining order against state enforcement of the 1963 injunction, together with the November 3, 1977 ancillary injunction, which might result in arrests of the demonstrators for apparent violation of the injunctions. Specifically, however, plaintiff has directed her temporary restraining order request against Judge Revels, who issued the 1963 and 1977 injunctions, because she fears being adjudged in contempt of those injunctions. Plaintiff clearly presents federal, constitutional questions, alleging the denial of fundamental First Amendment freedoms of speech and assembly, as well as the denial of fundamental due process by the injunctions that are asserted to be impermissibly vague and overbroad in their scope.

## LAW

The question presented by this motion is whether this Court can properly entertain plaintiff's § 1983 action for redress of constitutional rights, and enjoin a state judge from enforcing his injunctive orders, when there exist several, available state forums in which to raise the same constitutional questions arising under federal law. The Court's ruling on this question is controlled by two decisions of the United States Supreme Court: *Walker v. Birmingham*, 388 U.S. 307, 87 S.Ct. 1824, 18 L.Ed.2d 1210 (1967) and *Juidice v. Vail*, 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977).

In *Walker v. Birmingham, supra,* the Reverend Dr. Martin Luther King, Jr., and others, after being denied permits, defied an Alabama state court injunction against street parades, demonstrations, and other acts of mass assembly. *Id.* at 321–22, 87 S.Ct. at 1832, 18 L.Ed.2d at 1220–21. The language of the injunction, reminiscent of the injunction in this case, was, in the Supreme Court's view, "unquestionably . . . subject to substantial constitutional attack" for its "breadth and vagueness." *Id.* at 317, 87 S.Ct. at 1830, 18 L.Ed.2d at 1217. Nevertheless, the Court ruled that

. . . the way to raise that question was to apply to the Alabama courts to have the injunction modified or dissolved. *Id.*

The state court indisputably possessed inchoate jurisdiction to determine whether it had subject matter jurisdiction to issue the original injunction. "The injunction in all events clearly prohibited mass parading without a permit" and the defendants "fully understood that prohibition when they violated it." The Supreme Court upheld the defendants' contempt convictions, ruling that the defendants "could not bypass orderly judicial review of the injunction before disobeying it." *Id.* at 320, 87 S.Ct. at 1832, 18 L.Ed.2d at 1219.

*Juidice v. Vail, supra,* was a case where a state court defendant failed to respond in a civil case and a default judgment was entered against him. He failed to obey a subpoena to appear for a deposition after judgment, in aid of satisfaction and execution of the judgment. Nearly two months after ignoring the subpoena, the state judge issued an order to show cause why the defendant should not be held in contempt. The defendant failed to appear at the contempt hearing as well. The state judge held the defendant in contempt and imposed sanctions. The defendant brought a lawsuit in federal court, seeking a class action, to enjoin such contempt procedures. The United States Supreme Court held that

considerations of comity between the state courts and federal courts in our governmental system of federalism dictated that the federal court not interfere in such state court proceedings. 430 U.S. at 335, 97 S.Ct. at 1217, 51 L.Ed.2d at 384. The Court declared that the principles of federal-state comity

. . . apply to a case in which the State's contempt process is involved. A State's interest in the contempt process, through which it vindicates the regular operation of its judicial system, so long as that system affords the opportunity to pursue federal claims within it, is surely an important interest. . . . it is of sufficiently great import to require application of the principles [of federal-state comity]. *Id.*

The Court held that it did not affect the requirement that the federal court abstain if the contempt process was characterized as civil, criminal, or quasi-criminal. *Id.* at 335, 97 S.Ct. at 1217, 51 L.Ed.2d at 385. The state's legitimate interest in maintaining compliance with its judicial orders was paramount no matter what the characterization. Furthermore, interference with that interest by a federal court's injunctive orders not only would disrupt the state's concern for having its courts' orders obeyed, it reflected negatively upon the fidelity and ability of the state courts to observe and enforce constitutional principles. *Id.* The Court found that the defendants

. . . had an opportunity to present their federal claims in the state proceeding. No more is required to invoke . . abstention

under principles of federal-state comity. *Id.*

[T]heir failure to avail themselves of such opportunities does not mean that the state procedures were inadequate. Presumptively, therefore, the principles which underlie [comity abstention] call for dismissal of the action. *Id.* at 337, 97 S.Ct. at 1218, 51 L.Ed.2d at 386.

█ In the present case, plaintiff and the members of the class that she seeks to represent have available to them forums in

the courts of the State of Florida in which to raise their constitutional challenges to the 1963 and 1977 injunctions by Judge Revels. They can present their federal grounds in the contempt proceeding before Judge Revels just three days from today. Although they have not previously, they can request Judge Revels to dissolve his 1977 or 1963 injunctions, pursuant to Fla.R. Civ.P. 1.610(c), on the ground that it is contrary to federal law which they assert. It has long been the law in Florida that, when it is shown that an injunction was unjustified under the facts or law, or both, it should be dissolved at the earliest request. *Charlotte Harber & N. Ry. Co. v. Lancaster,* 70 Fla. 200, 69 So. 720, 722 (1915); *Gillespie v. Chapline,* 59 Fla. 500, 52 So. 722, 725–26 (1910).

█ Moreover, an appeal from the 1977 injunction was available after its issuance on November 3, 1977. If the circuit judge who issued the injunction granted a stay or supersedeas bond, or if the District Court of Appeal issued a rule nisi, the effect would have been to remove the restraint against plaintiff and the members of the community from assembling, demonstrating, and marching. *Mogul v. Fodiman,* 295 So.2d 663, 664 (4th D.C.A. Fla. 1974); *State ex rel. Marden v. Chastain,* 197 So.2d 561, 563 (3d D.C.A. Fla. 1967). Finally, a writ of prohibition is an extraordinary, but appropriate, remedy to prevent the improper and unlawful imposition of contempt sanctions in the Florida courts. *State ex rel. Gillham v. Phillips,* 193 So.2d 26, 29 (2d D.C.A. Fla. 1966); *Scussel v. Kelly,* 152 So.2d 767, 780– 82 (2d D.C.A. Fla. 1963).

█ In short, so long as plaintiff has available to her procedures and remedies in the state courts, including the opportunity to contest the existing state court injunctions before the court that issued them, this Court is obligated to refrain from interfering with those state court orders and procedures. The Court expressly states what it is not holding. The Court is not holding that the current state court injunctions (from 1963 and 1977) satisfy federal constitutional standards. Neither is the Court

312

holding that plaintiff, and those whom she seeks to represent, are not guaranteed the constitutional liberties that they assert. Instead, the Court holds only that respect for the existing orders and available remedies of the state courts, as well as for their integrity and fidelity in enforcing federal constitutional law, requires that this Court abstain from injunctively interfering with those courts. The principles of federal-state comity demand avoidance of the unseemly prospect of an injunctive order by this Court clashing with existing injunctive decrees of a state court and its efforts to have those decrees obeyed. What the Supreme Court stated in *Walker v. Birmingham, supra,* is just as applicable to the present case.

> . . . in the fair administration of justice no man can be judge in his own case, however exalted his station, however righteous his motives, and irrespective of his race, color, politics, or religion. This Court cannot hold that [plaintiff and those she seeks to represent] [are] constitutionally free to ignore all the procedures of the law and carry their battle to the streets. One may sympathize with [their] impatient commitment to their cause. But respect for judicial process is a small price to pay for the civilizing hand of law, which alone can give abiding meaning to constitutional freedom. 388 U.S. at 320–21, 87 S.Ct. at 1832, 18 L.Ed.2d at 1219–20.

Similarly, the civilizing rule of law in federal-state relations prevents this Court from interfering in the state judicial processes, in order to permit plaintiff and those whom she would represent to bypass and ignore those processes, while acting in defiance of them. The motion for a temporary restraining order must be denied and this case dismissed without prejudice.