# Third District Court of Appeal

**State of Florida**

Opinion filed August 15, 2018.
Not final until disposition of timely filed motion for rehearing.

_____

Nos. 3D17-2754 & 3D17-2755
Lower Tribunal No. 15-20574

_____

**Yacenda Hudson and Amina McNeil,
and Ditech Financial LLC f/k/a Green Tree Servicing, LLC,**
Petitioners,

vs.

**Wilson Marin and Paola Sibon,**
Respondents.

Original Jurisdiction Proceedings – Prohibition/Certiorari

Tromberg Law Group, P.A., and Jason Joseph (Boca Raton); Law Office of Zena X. Duncan, P.A., and Zena X. Duncan; White & Case LLP, and Raoul G. Cantero and Zachary B. Dickens; Hinshaw & Culbertson LLP, and Maureen G. Pearcy and David S. Weinstein, for petitioners.

Jacobs Legal, PLLC, and Bruce Jacobs, for respondents.

Before ROTHENBERG, C.J., and SUAREZ and SCALES, JJ.

PER CURIAM.

In these consolidated prohibition proceedings, petitioners Yacinda Hudson and Amina McNeil, both attorneys, each seek a writ prohibiting the trial court from conducting any further proceedings related to a November 20, 2017 trial court order directing petitioners to show cause why they should not be held in indirect criminal contempt of court for violation of a discovery order. This challenged order also appoints the respondents' counsel, attorney Bruce Jacobs, to prosecute the indirect criminal contempt proceedings on behalf of the trial court. After we consolidated the two petitions, this Court permitted the plaintiff below, Ditech Financial LLC ("Ditech"), to submit a brief in support of the two petitioners, both of whom are employed by a law firm representing Ditech in a foreclosure case against the respondents. Because, under the facts and circumstances of this case, (i) the acts cited in the show cause order do not constitute indirect criminal contempt of court so as to impose a threatened jail sentence against the petitioners, and (ii) attorney Jacobs cannot serve as the special prosecutor because he is a material witness to the underlying acts providing the basis for the lower court's show cause order, we grant the consolidated petition for writ of prohibition and issue the writ.[1]

**I. Relevant Facts and Procedural Background**

---

[1] The petitioners also sought, in the alternative, issuance of a writ of certiorari. We need not, and therefore do not, reach the issue of whether certiorari is an appropriate remedy in this matter.

2

On September 4, 2015, Ditech filed a foreclosure action against the respondents, defendants below, Wilson Marin and Paola Sibon.[2] According to Ditech's verified complaint, Marin defaulted by failing to make his August 2014 mortgage payment. Attached to the verified complaint is a September 2010 loan modification agreement between Marin, as borrower, and Green Tree Servicing LLC (now known as Ditech), as lender. The September 2010 loan modification agreement changed many of the original loan terms, brought the original loan current from a prior default, extended the original loan's maturity date, waived late charges and lowered the monthly payment.

In their Answer, the respondents declared that the mortgage, note and September 2010 loan modification agreement spoke for themselves, but denied all allegations with respect thereto. The respondents also raised numerous affirmative defenses, none of which appear to be specifically directed toward the September 2010 loan modification agreement.

In February 2017, the law firm of Gladstone Law Group, P.A. filed a notice of appearance as Ditech's new counsel. The notice, which was signed by attorney Marie Fox, did not designate any particular attorney from Gladstone Law Group, P.A. as Ditech's attorney of record. Nevertheless, the record confirms that

---

[2] At the time, Ditech was represented by a different law firm.

petitioner McNeil represented Ditech on behalf of Gladstone Law Group, P.A. in this matter at all times material to this case.

During discovery, on May 26, 2017, the respondents served a Notice of Taking Deposition Duces Tecum on Ditech. Therein, the respondents requested that "plaintiff's trial witness" produce the following documents for inspection:

**DOCUMENTS TO BE PRODUCED**

1.    All trial exhibits.

2.    All training manuals, training policies and/or training procedures for any training under which the witness will claim gives them sufficient knowledge to qualify as a witness under the business records exception to enter those trial exhibits into evidence.

3.    All records showing when the witness received any such training, where it was presented, and who presented the training under which the witness will claim gives them sufficient knowledge to qualify as a witness under the business records exception to enter those trial exhibits into evidence.

This notice set the deposition for June 28, 2017.

On June 16, 2017, Ditech filed a motion for a protective order. In its motion, Ditech argued that all of the document requests were "irrelevant to any of the issues framed by the pleadings," stating that Ditech had standing and that the underlying loan was in default. Ditech further noted that it had already produced numerous documents to the respondents, including the September 2010 loan modification agreement between Marin and GreenTree/Ditech. As to the

4

respondents' request for production of training manuals, Ditech specifically objected that "such request seeks to discover information which is not relevant to the subject matter of this action in that it is outside the scope of the instant lawsuit, and is not reasonably calculated to lead to the discovery of admissible evidence." Ditech's motion for protective order was set for hearing on June 27, 2017, but apparently was not heard that day.

On June 28, 2017, before Ditech's motion for a protective order was heard, the respondents' attorney, Bruce Jacobs, took the deposition of Ditech's witness, Christopher Ogden. Attorney McNeil defended the deposition. Although the loan had been modified and that modification was ratified by Marin, the defendant below, attorney Jacobs directed Ogden to answer questions about: (i) Ditech's loan boarding process between the original servicer of the instant note and mortgage (Bank United FCS) and Ditech, when Ditech began servicing the loan in April 2009; and (ii) a power point presentation that Ogden had reviewed on Ditech's loan boarding process. When the deposition became contentious over what attorney Jacobs felt were evasive answers by witness Ogden, attorney Jacobs announced, "I'm going to suspend this deposition, and I'm going to go to court and ask the judge to do something about this."

The next day, June 29, 2017, the matter of the suspended deposition and Ditech's related motion for a protective order were heard by Judge Pedro Echarte,

5

Jr. during calendar call. There is no transcript of the hearing. The trial court, though, entered a written order denying Ditech's motion for a protective order ("the June 29, 2017 Calendar Call Order"),[3] which states in its entirety:

> Plaintiff's motion for protective order is Denied. Plaintiff's trial witness shall bring any and all training manuals and documents requested in Defendants' notice of taking deposition duces tecum. The parties shall mutually coordinate the continuation of the deposition of Plaintiff's trial witness prior to trial. Trial shall be July 28th at 10:00 am. If the parties cannot agree on a deposition time and day it shall be on Sunday, July 23, 2017 at midnight.

Over the ensuing three weeks, attorneys Jacobs and McNeil were unable to reach a mutually agreed upon time and date for the continuation of witness Ogden's deposition. While the attorneys agreed upon Friday, July 21, 2017, as the deposition date, they could not agree upon a time of day due to scheduling issues.

In the meantime, on Wednesday, July 19, 2017, prior to the continuation of Ogden's deposition, Ditech filed "Plaintiff's Motion to Seal and Bar Dissemination of Confidential Material" ("Ditech's Seal Motion"). Therein, Ditech argued that its training manuals were privileged work product not subject to disclosure, but that it was "willing to make these materials available for inspection and as the basis of the scope of the deposition of its trial witness" if the trial court entered an order sealing and barring dissemination of the training manuals to the public. After Ditech's motion came before the trial court for an *ex parte* hearing on Friday,

---

[3] Attorney McNeil is listed as Ditech's counsel in the order's service list.

July 21, 2017, the lower court entered an order stating that the motion was not an emergency, that the motion could not be considered *ex parte*, and that the motion should be scheduled for a hearing.

Consistent with the scheduling dictates of the June 29, 2017 Calendar Call Order, on Sunday, July 23, 2017, at midnight, attorney McNeil and witness Ogden appeared at attorney Jacobs's office for the continued deposition of Ogden. Petitioner Yacenda Hudson, another attorney from the Gladstone Law Group, P.A., was also in attendance. The record reflects that, up to this point, attorney Hudson had no involvement in this case. Given the midnight hour and location of Ogden's continued deposition, attorney Hudson accompanied attorney McNeil ostensibly out of safety concerns for Ms. McNeil.

While witness Ogden brought to the deposition the power point presentation that had been discussed during the suspended deposition so that he could be questioned about it, attorney McNeil advised that Ditech would not turn the presentation over to attorney Jacobs unless attorney Jacobs agreed not to disseminate it to the public until such time as the trial court had the opportunity to rule on Ditech's Seal Motion. Attorney Jacbos refused the request and cancelled the midnight deposition.[4]

---

[4] There is no transcript of these events because the court reporter who had been hired to transcribe the deposition had not yet arrived at attorney Jacob's office when these discussions occurred.

7

The next day, on July 24, 2017, the respondents filed their "Motion for Order to Show Cause why Plaintiff Should not be Sanctioned for Violating the Court's Order on Calendar Call, Fla. R. Civ. P. 1.380, and Fla. R. Jud. Admin. 2.420" ("Show Cause Motion"), which was prepared by attorney Jacobs. The Show Cause Motion was *not sworn*. Therein, the respondents moved for *civil* sanctions against *Ditech* for: (i) Ditech's failure to turn over the power point presentation at the cancelled, midnight deposition; and (ii) Ditech's filing Ditech's Seal Motion that the respondents characterized as a facially insufficient motion to seal the record. As sanctions, the respondents sought to prevent witness Ogden from testifying about Ditech's loan boarding process at trial and for attorney's fees. The Show Cause Motion did not seek sanctions against either of the petitioners.

Ditech filed a response to the Show Cause Motion asserting that it had a right to seek a court order limiting disclosure of the training material to attorney Jacobs only, and reiterated its stance that the training material with respect to its loan boarding process was not relevant to the instant foreclosure action. In sum, Ditech argues that, because its foreclosure action is based on Marin's alleged default under the September 2010 loan modification agreement – and not the original loan – any evidence related to Ditech's boarding process (i.e., how loan

8

status information was transferred to Ditech from Marin's original lender) is irrelevant.

At 9:33 a.m. on November 16, 2017, Judge Echarte conducted a thirty-two minute hearing on the respondents' unverified Show Cause Motion. Only attorneys McNeil and Jacobs attended the hearing. At the start of the hearing, attorney Jacobs advised the trial court that attorney McNeil was not at fault, stating, "To be clear. Ms. McNeil and I have worked together on many cases. This was not Ms. McNeil's doing." Judge Echarte cut attorney Jacobs off mid-sentence and chastised both attorneys for being unable to reach a mutually agreeable date and time for the continued deposition of witness Ogden.

When the discussion turned to Ditech's refusal to turn over the power point presentation at the cancelled, midnight deposition, the following brief conversation occurred:

> MR: JACOBS: . . . I called [Ditech's counsel] multiple times. No response.
> Their only answer was would you agree to a confidentiality provision. I said what is confidential about these records if the witness is every day saying I reviewed these records and this is what they say?
> They're testifying to the contents of the records every day. There's not even a good faith basis to claim they're confidential. To which, I got no response, and then I show up on Saturday night. I walk into my office.
> There's two lawyers, the managing partner,[5] plus the witness and Ms. McNeil. They sit down and they say we're not giving you

---

5 The record reflects that Jacobs is referring to attorney Hudson as the "managing

the records.  I said why did you make me come here?  We already did the deposition of the witness.

THE COURT:  Listen, I reviewed your motion.

MR. JACOBS:  Okay.

THE COURT:  Let me hear from the Plaintiff.  Who decided to not turn over the records?

MS. MCNEIL:  Our office –

THE COURT:  Your office doesn't make decisions. Who decided?

MS. MCNEIL:  Our client, Your Honor, in discussion with their legal department.

THE COURT:  Huh?

MS. MCNEIL:  Our client, Green Tree slash Ditech and –

THE COURT:  Give me the name of a person because I want to know who goes to jail, along with the lawyer.

Unsatisfied with attorney McNeil's explanation of what transpired at the cancelled, midnight deposition and as to why the power point presentation was not turned over by Ditech,[6] Judge Echarte commented, "Somebody made a conscious decision to violate my order.  That person or persons will soon regret that

_____

partner."  In the consolidated petition, attorney Hudson maintains that she is not a managing partner at the Gladstone Law Group, P.A., which has since changed its name to Tromberg Law Group, P.A.

[6] At no point during this abrupt November 16, 2017 hearing did attorney McNeil state, or even suggest, that either she or attorney Hudson had advised Ditech not to produce the power point presentation at the cancelled, midnight deposition.

10

decision." Then after repeatedly stating that "bad things" were about to happen, the court ordered the power point presentation be produced by noon that day.

Judge Echarte then directed attorney Jacobs to prepare an order to show cause against attorney McNeil, attorney Hudson and witness Ogden for indirect criminal contempt of court for violation of the court's June 29, 2017 Calendar Call Order. The court specifically instructed attorney Jacobs that the show cause order should "recite the facts set forth in your motion." The court then appointed attorney Jacobs to prosecute the indirect criminal contempt proceeding.

That same day, at 11:59 a.m., Ditech served its notice of compliance with the Judge Echarte's oral ruling to turn over the power point presentation by noon. Attached to the notice was a copy of the power point presentation that witness Ogden had purportedly testified to during the suspended deposition and later had brought to the cancelled, midnight deposition.

The next day, November 17, 2017, attorney Jacobs prepared and filed on behalf of the respondents a second motion for order to show cause against Ditech ("Second Show Cause Motion"). Like the first Show Cause Motion, the Second Show Cause Motion was not sworn. This time, the respondents contended that the power point presentation produced by Ditech could not possibly be the training material that witness Ogden had testified about during the suspended deposition; therefore, the respondents argued, Ditech had willfully and contumaciously

11

ignored Judge Echarte's oral ruling – made at the November 16, 2017 hearing – to produce the material by noon that day. The respondents also claimed in their Second Show Cause Motion that "Ditech and its counsel are attempting to introduce evidence under false pretenses by improperly asking that the Court deem these documents confidential," and that witness Ogden "gave grossly inaccurate testimony about Ditech's loan boarding process."

Attorney Jacobs **then** prepared and submitted to the trial court a proposed order to show cause against witness Ogden and attorneys Hudson and McNeil; attached to this proposed show cause order was an unsworn document, labeled as "Exhibit A," which purported to set forth the factual basis for the order.

While Exhibit A set forth the "facts" from the respondents' Show Cause Motion, Exhibit A **also** contained numerous additional "facts," added by attorney Jacobs, that had not been included in the respondents' Show Cause Motion, nor even discussed at the November 16, 2017 hearing on same. Indeed, Exhibit A **also** included – as "facts" related to the respondents' **initial** Show Cause Motion – allegations that were set forth in the respondents' **Second** Show Cause Motion (that attorney Jacobs filed **after** the November 16, 2017 hearing on the respondents' first Show Cause Motion). These additional unsworn "facts" included allegations that: (i) "[t]he training manual produced on November 16, 2017, now appears to show that Ditech's standard business practice does not verify

prior servicer's records for accuracy before boarding loans"; (ii) "[t]he training manual produced appears to show that Ditech's witness, Christopher Ogden . . . , gave false testimony in an effort to introduce the prior servicer's records into evidence under false pretenses"; and (iii) "Ditech and its counsel improperly sought to have the records deemed confidential to avoid disclosure of the fact that its witness gave grossly inaccurate testimony about Ditech's loan boarding process in an effort to admit prior servicer's records under false pretenses." Thus, the record reflects that although the trial court appointed attorney Jacobs to serve as a special prosecutor and specifically instructed attorney Jacobs to prepare a show cause order reciting the facts set forth in his first Show Cause Motion, attorney Jacobs included additional allegations that *he* was requiring the petitioners to answer at the show cause hearing.

On November 20, 2017, Judge Echarte entered the proposed order prepared by attorney Jacobs, including its Exhibit A ("Show Cause Order"). The Show Cause Order named the respondents' attorney, Bruce Jacobs, as the prosecutor for the proceedings on the Show Cause Order.[7]

After entry of the Show Cause Order, Ditech moved to disqualify Judge Echarte from the case. Judge Echarte granted the motion and the Honorable

---

[7] While it is upon this Show Cause Order that the instant consolidated petitions seek to prohibit further proceedings, we include, *infra*, much of the post-Show Cause Order procedural occurrences to help inform our issuance of the instant writ.

Beatrice Butchko took over the case. Pursuant to Florida Rule of Judicial Administration 2.330(h),[8] the petitioners and witness Ogden then moved for reconsideration of the Show Cause Order. The petitioners also moved to disqualify attorney Jacobs from prosecuting the indirect criminal contempt proceeding, arguing that attorney Jacobs was a material witness to the "facts" set forth in Exhibit A, and was personally invested in the outcome of the proceedings on the Show Cause Order.

Attorney Jacobs then prepared and filed a third motion for order to show cause on behalf of the respondents ("Third Show Cause Motion"). This motion, *also unsworn*, sought to hold Ditech and "Ditech's Legal Department" in indirect criminal contempt based on attorney McNeil's comments during the November 16, 2017 hearing that Ditech "in discussion with their legal department" had made the decision not to turn over the power point presentation at the cancelled, midnight deposition.

On December 7 and 14, 2017, Judge Butchko held a hearing on the various pending matters before her: (i) the petitioners' and witness Ogden's rule 2.330(h) motions for reconsideration of Judge Echarte's Show Cause Order; (ii) the petitioners' motion to disqualify attorney Jacobs from prosecuting the indirect

---

[8] Rule 2.330(h) authorizes the reconsideration of prior factual and legal rulings made by a disqualified judge so long as such reconsideration motion is filed within twenty days of the disqualification order.

criminal contempt proceeding; (iii) the respondents' Second Show Cause Motion directed toward Ditech; and (iv) the respondents' Third Show Cause Motion directed toward Ditech and "Ditech's Legal Department."[9] Judge Butchko granted witness Ogden's rule 2.330(h) motion for reconsideration, thus dismissing the Show Cause Order against witness Ogden; but, Judge Butchko denied the petitioners' rule 2.330(h) motion. Judge Butchko also denied the petitioners' motion to disqualify attorney Jacobs from prosecuting the indirect criminal contempt proceedings on the Show Cause Order. Following the hearings, the trial court, in summary fashion, entered three separate written orders consistent with these rulings. On January 2, 2018, the trial court entered an order staying proceedings on the Show Cause Order pending this Court's adjudication of the instant prohibition petitions filed by attorneys McNeil and Hudson.[10, 11]

---

[9] The day prior to the December 14, 2017 hearing, the respondents amended their Second and Third Show Cause Motions to add a sworn, verification by attorney Jacobs.

[10] The December 14, 2017 hearing transcript reflects that the trial court also stayed any ruling on the respondent's Second and Third (now verified) Show Cause Motions pending the outcome of this consolidated petition.

[11] The trial court docket reflects that, while the consolidated petitions have been pending before this Court, Judge Butchko recused herself from this case. The case was then reassigned to the Honorable Abby Cynamon, who also recused herself from this case. The case is currently assigned to a fourth trial court judge, the Honorable Jacqueline Hogan Scola. After oral argument before the panel of this Court, the respondents also sought the recusal of two panel members: Chief Judge Rothenberg and Judge Suarez; both of these judges denied the respondents' recusal motion.

**II. Analysis**

*A. Prohibition is an Appropriate Remedy*

As a threshold issue, we must first determine whether prohibition is an appropriate remedy to halt the instant indirect criminal contempt proceedings stemming from the Show Cause Order. After all, prohibition is an extraordinary, preventative remedy that is generally granted to prohibit a lower tribunal from acting in excess of its jurisdiction. Shteyn v. Grandview Palace Condo. Ass'n, 147 So. 3d 675, 676 (Fla. 3d DCA 2014). Plainly, circuit courts have the "jurisdiction" to enter show cause orders and to conduct indirect criminal contempt proceedings. Indeed, Florida Rule of Criminal Procedure 3.840 expressly authorizes a Florida trial court to: (i) issue an order to show cause against a defendant on the court's own motion; (ii) order that a hearing be held on the show cause order; (iii) appoint an attorney to conduct the hearing on behalf of the court; and (iv) find the defendant in indirect criminal contempt. Plus, a defendant found in indirect criminal contempt of court may seek relief from the contempt order on direct appeal. See, e.g., J.M.P.U. v. State, 858 So. 2d 389 (Fla. 3d DCA 2003); Kersh v. State Farm Fire & Cas. Co., 686 So. 2d 782 (Fla. 3d DCA 1997). So, at least at first blush, prohibition would seem unavailable to the petitioners in this case.

Florida's appellate courts, however, have found that, ***in very limited circumstances,*** prohibition will lie to prevent a hearing from going forward on an

16

order to show cause where the factual basis underlying the show cause order, if taken as true, could not constitute contempt of court. See Aurora Bank v. Cimbler, 166 So. 3d 921, 927 n.5 (Fla. 3d DCA 2015) (concluding that prohibition would lie to prevent the trial court from going forward on a hearing for civil contempt sanctions for violation of a discovery order because, in part, "[r]efusing to comply with a non-party mediator's discovery requests directed at privileged information is not contemptuous conduct"); Tsokos v. Sunset Cove Invs., Inc., 936 So. 2d 667, 667-68 (Fla. 2d DCA 2006) (granting a writ of prohibition and quashing an order to show cause "why [the petitioners] should not be held in indirect criminal contempt for their willful disobedience and interference with the final judgment in a lawsuit to which they were not parties" because "the final judgment did not proscribe the conduct that forms the basis of the order to show cause"); Eubanks v. Agner, 636 So. 2d 596, 598 (Fla. 1st DCA 1994) ("We find . . . that the facts alleged in the order to show cause, if taken as true, do not and could not constitute [indirect criminal] contempt of court. Accordingly, we grant the petition for writ of prohibition and order that no further proceedings be had on the order to show cause."); Anderson Invs. Co. v. Lynch, 540 So. 2d 832, 833 (Fla. 4th DCA 1998) (granting petition for writ of prohibition to prevent a contempt proceeding from going forward based on a nonparty witness's failure to appear at a deposition because "a person who is not a party to a pending lawsuit must be served with a

17

subpoena before being required to appear for deposition"); Allman v. Johnson, 488 So. 2d 884, 885 n.3 (Fla. 5th DCA 1986) (citing State ex rel. Gary v. Davis, 91 So. 267 (1922) for the principle that "prohibition is available to restrain a contempt proceeding where petitioner is shown not to have violated any valid order of the trial court at the time it issued an order of contempt"); State ex. rel. Gillham v. Phillips, 193 So. 2d 26, 29 (Fla. 2d DCA 1966) ("[P]rohibition is an appropriate remedy to prevent judicial action when the judge is without jurisdiction to act in a cause, and may be specifically invoked against a judge when a party is about to be cited for contempt on the basis of acts which could not constitute contempt of court."). As our sister court explained long ago, "it appears settled that prohibition can be invoked when the very basis of the contempt charge is an invalid one and the proceeding is in violation of the requirements of due process." Scussel v. Kelly, 152 So. 2d 767, 780 (Fla. 2d DCA 1963), quashed on other grounds, 167 So. 2d 870 (Fla. 1964).

Therefore, if we determine that this is one of those rare cases in which the underlying indirect criminal contempt charge is invalid, then prohibition is available as a remedy to the petitioners. Given the unique factual circumstances presented in this case, we conclude that the underlying Show Cause Order is invalid as to the petitioners, and therefore prohibition is an appropriate remedy in this case.

18

In addition, prohibition will lie to prevent a contempt proceeding from going forward at a hearing before a judge that should be disqualified. Id. at 782; Castro v. Luce, 650 So. 2d 1067, 1068 (Fla. 2d DCA 1995). For analogous reasons, we also conclude that prohibition is also an appropriate remedy where the attorney appointed by the trial court to serve as the special prosecutor at the contempt hearing should be disqualified.

### B. *No Valid Basis for Finding the Petitioners in Indirect Criminal Contempt*

The respondents noticed their first Show Cause Motion – directed not toward the petitioners, but at Ditech – for hearing on November 16, 2017. At that hearing, the trial court converted what was to be a proceeding ***for civil sanctions against a party (Ditech)*** into an indirect criminal contempt proceeding to punish Ditech's attorney, Ms. McNeil, and also Ms. McNeil's law partner, Ms. Hudson. While a trial court may, on its own, issue an order requiring a person to show cause as to why the person should not be held in indirect criminal contempt, strict compliance with the requirements of rule 3.840 is mandated. See Pugliese v. Pugliese, 347 So. 2d 422, 426 (Fla. 1977) ("It is possible to convert civil contempt proceedings to criminal contempt proceedings after a hearing is commenced. Such a conversion would mandate the continuation of the hearing to provide for issuance of an order to show cause that complies with [rule 3.840] with fair opportunity to the respondent to prepare and be heard."); Berlow v. Berlow, 21 So. 3d 81, 84 (Fla.

3d DCA 2009) (stating that the failure to strictly comply with rule 3.840 is fundamental error).

Indirect criminal contempt results from conduct outside the presence of the trial court. See Pugliese, 347 So. 2d at 425; Berlow, 21 So. 3d 81, 83 n.1. It generally may be found where there has been (i) a violation of a clear and definitive court order, or (ii) the offending conduct was "calculated to embarrass, hinder, or obstruct the court in the administration of justice or calculated to lessen the court's authority and dignity." Eubanks, 636 So. 2d at 596. For the following reasons, we conclude that the Show Cause Order fails to set forth an adequate factual basis for finding the petitioners in indirect contempt of court under either ground.

*1. No Violation of a Clear and Definitive Court Order by the Petitioners*

"For a person to be held in contempt of a court order, the language of the order must be clear and precise, *and* the behavior of the person must clearly violate the order." Paul v. Johnson, 604 So. 2d 883, 884 (Fla. 5th DCA 1992) (footnotes omitted); see also Kane v. Sanders, 232 So. 3d 1107, 1110-11 (Fla. 3d DCA 2017) ("To support a contempt finding, the violated court order must also clearly and definitely make the party aware of the court's command."). A finding of contempt requires "the violation of the letter of an order – not its spirit." Reder v. Miller,

20

102 So. 3d 742, 744 (Fla. 2d DCA 2012). "A contempt cannot be based on behavior that the court order does not contain." Kane, 232 So. 3d at 1111.

The Show Cause Order is premised upon the violation of a discovery order – the June 29, 2017 Calendar Call Order. That discovery order is clearly directed to the **party**, Ditech, providing that "[Ditech's] trial witness shall bring any and all training manuals and documents requested in [the respondents'] notice of taking deposition duces tecum." Though attorney McNeil is listed in the discovery order's service list as Ditech's attorney, the order is not directed toward her. Clearly, the discovery order is not directed toward attorney Hudson, who had no involvement in the case at the time.

At most, **Ditech** violated the June 29, 2017 Calendar Call Order by failing to produce[12] the power point presentation at the cancelled, midnight deposition. The respondents have not cited, nor have we found, any cases holding a party's attorney in indirect criminal contempt for the party's violation of a discovery order

---

[12] The petitioners and Ditech argue that, because the June 29, 2017 Calendar Call Order instructed Ditech's witness to "bring" the power point presentation to the continued deposition, as opposed to turning it over, no violation of the discovery order occurred in this case. We find this argument highly questionable, given that Ditech subsequently filed Ditech's Seal Motion, and that attorney McNeil conceded at the November 16, 2017 hearing that it was Ditech's understanding that the June 29, 2017 Calendar Call Order required that the power point presentation be produced. Given our resolution of this matter on other grounds, though, we need not, and therefore do not, reach this issue. This argument may be more appropriate for proceedings on Ditech's Second and Third Show Cause Motions that are directed toward Ditech and "Ditech's Legal Department."

21

under circumstances such as are present here. On the record before this Court, we can find no basis to hold attorneys McNeil and Hudson in indirect criminal contempt of court for violation of the June 29, 2017 Calendar Call Order. See Allman, 488 So. 2d at 885 n.3 (recognizing that "prohibition is available to restrain a contempt proceeding where petitioner is shown not to have violated any valid order of the trial court").

### 2. *No Evidence of Offending Conduct by Attorneys McNeil and Hudson*

Though the June 29, 2017 Calendar Call Order was not directed at attorneys McNeil and Hudson, these petitioners could still be found in indirect criminal contempt if there was any evidence that the petitioners acted in a manner "to embarrass, hinder, or obstruct the court in the administration of justice or calculated to lessen the court's authority and dignity." Eubanks, 636 So. 2d at 596. Ostensibly, this could possibly include evidence that the petitioners advised Ditech not to produce the power point presentation at the cancelled, midnight deposition in violation of the June 29, 2017 Calendar Call Order.

Rule 3.840 provides, in relevant part, that the "judge, on the judge's own motion or on an affidavit of any person having knowledge of the facts, may issue and sign an order directed to the defendant, stating the essential facts constituting the criminal conduct charged." Fla. R. Crim. P. 3.840(a). Thus, as relevant here, where the trial court, *sua sponte*, issues a show cause order, the order must be

22

supported by either a sworn motion, a sworn affidavit, sworn testimony or other evidence that gives the judge adequate knowledge of the events in question. See Wilcoxon v. Moller, 132 So. 3d 281, 287 (Fla. 4th DCA 2014) ("Rule 3.840(a) requires the court to issue an order to show cause supported by an affidavit or sworn testimony."); De Castro v. DeCastro, 957 So. 2d 1258, 1260 (Fla. 3d DCA 2007) ("The trial court may issue an order to show cause for indirect criminal contempt on its own motion if the trial judge has adequate knowledge of the events in question. Where the show cause order is, however, premised upon facts outside the trial court's knowledge, the order must be based upon an affidavit or sworn testimony of an individual having personal knowledge of the essential facts."); Baker v. Green, 732 So. 2d 6, 7 (Fla. 4th DCA 1999) ("In this case there was no sworn affidavit or testimony to support the trial court's issuance of the order to show cause. . . . Where there is no affidavit or sworn testimony to support the issuance of an order to show cause, the failure to comply with the rule is fundamental error and a contempt order arising out of that proceeding may not stand."). Against this backdrop, we review the record for either (i) any sworn evidence, or (ii) evidence known to Judge Echarte that either petitioner McNeil or Hudson advised Ditech to violate the June 29, 2017 Calendar Call Order.

a. *No Sworn Motion, Sworn Affidavit or Sworn Testimony, and Exhibit A's Additional Significant Infirmity*

23

At the November 16, 2017 hearing, Judge Echarte heard no sworn testimony and had before him only the respondents' unsworn Show Cause Motion. And, because no court reporter was present at attorney Jacobs's office on Sunday, July 23, 2017, at midnight, there is no record of what transpired when the continued deposition of witness Ogden was cancelled. Consequently, there is no sworn testimony by witness Ogden about his understanding as to why the power point presentation was not turned over that night.

While the court instructed attorney Jacobs to prepare a show cause order that "recite[s] the fact set forth in [his] motion," the Show Cause Order, prepared by attorney Jacobs and entered by the court, did not set forth any essential facts in the order itself. Rather, the factual basis for the Show Cause Order was set forth in Exhibit A, itself an unsworn attachment to the order. Because Exhibit A was unsworn, it failed to comply with rule 3.840 and, therefore, could not be considered as evidence that the petitioners advised Ditech to violate the June 29, 2017 Calendar Call Order.[13]  See Giles v. Renew, 639 So. 2d 701, 702-03 (Fla. 2d DCA 1994) ("The [show cause] order the trial court entered failed to set out any facts. Although we believe that the better practice is for the trial court to set out the facts in the order itself, this court has recognized that a person's due process

_____

[13] Because the respondents' initial Show Cause Motion was not sworn, it also would have failed to comply with rule 3.840 had it been attached to the Show Cause Order.

24

rights will be protected if the order expressly incorporates and attaches the sworn petition to the order in place of setting forth the facts in the order. The order in this case failed to incorporate the facts in the amended petition. Failure to comply with Rule 3.840 constitutes fundamental error.") (citation omitted) (footnote omitted). In sum, the record contains no sworn evidence that either of the petitioners advised Ditech to violate the June 29, 2017 Calendar Call Order.

Aside from being unsworn, Exhibit A to the Show Cause Order suffers from an additional, significant infirmity that we would be remiss in not discussing. Exhibit A contained additional "facts" that were taken directly from the respondents' *Second* (then unsworn) Show Cause Motion, that attorney Jacobs filed on November 17, 2017 – *after* the hearing on the respondents' initial Show Cause Motion. Exhibit A therefore contained *allegations* (incorporated into the Show Cause Order as "*facts*") that were never presented prior to, nor considered at, the November 16, 2017 hearing. Nor were any of these additional allegations part of Judge Echarte's stated reason for issuing the Show Cause Order.

By including the allegations from the respondents' *Second* Show Cause Motion in the Show Cause Order, this matter morphed from a civil contempt proceeding seeking sanctions based on violation of a simple discovery order into a criminal contempt proceeding centered on then unsubstantiated claims that "Ditech

and its counsel" suborned perjury of its witness with respect to its loan boarding process.[14]

When the trial court directs trial counsel to prepare an order consistent with its oral ruling, it is expected that the attorney will comply. Attorney Jacobs's inclusion of "facts" in Exhibit A that were outside the scope of the November 16, 2017 hearing on the respondents' Show Cause Motion calls to mind the warning given by the Florida Supreme Court in Pugliese:

> We emphasize that in any instance where the trial court can reasonably anticipate that conduct of such a nature is present as will invoke the criminal contempt powers of the court to punish the offender, procedural due process of law demands that the proceedings be conducted in conformity with Fla. R. Crim. P. 3.840. If the trial court is of a mind in cases such as here presented to punish rather than coerce, then counsel for an offended party should be so advised when he makes application for an order of contempt so that proper affidavit and order to show cause can be secured to comply with the requirements of the rule. It is possible to convert civil contempt proceedings after a hearing is commenced. Such a conversion would mandate the continuation of the hearing to provide for issuance of an order to show cause that complies with the rule with fair opportunity to the respondent to prepare and be heard. However, such practice flirts with procedural due process flaws. Accordingly, better practice suggests that such situations be anticipated in advance wherever possible so that the full due process safeguards required by Fla. R. Crim. P. 3.840 will be afforded.

---

[14] In its brief, Ditech reiterates its long held position that it has no intention of relying upon any information about its loan boarding process at trial because the underlying foreclosure action is based on Marin's alleged default of the September 2010 loan modification agreement. See, footnote 5, *supra*. Therefore, Ditech argues essentially that both it and the petitioners now face being found in indirect criminal contempt for Ditech's failure to timely comply with a court order to produce an irrelevant document.

Pugliese, 347 So. 2d at 426.

Hence, not only is Exhibit A inadequate because it is unsworn, the inclusion by attorney Jacbos in the Show Cause Order of those "facts" in Exhibit A that were neither contained in the Show Cause Motion nor discussed at the hearing on same, significantly undermines the validity of the Show Cause Order in this case.

b. *No Other Evidence that the Trial Judge had Adequate Knowledge of the Events in Question*

Absent a sworn motion, sworn affidavit or sworn testimony, rule 3.840 requires that an order to show cause be supported by some other evidence of which the trial judge has adequate knowledge. Wilcoxon, 132 So. 3d at 287; DeCastro, 957 So. 2d at 1260; Baker, 732 So. 2d at 7. In this matter, because there was no sworn evidence, the trial court presumably derived any knowledge as to why the power point presentation was not produced solely from the two attorneys who attended the November 16, 2017 hearing – attorneys McNeil and Jacobs. As discussed below, nothing from that November 16, 2017 hearing could have provided the trial court with any knowledge – much less "adequate knowledge" – that either of the petitioners had advised Ditech not to produce the power point presentation.

i. *Knowledge Derived from Attorney McNeil*

27

We note, preliminarily, some potential constitutional considerations on questions asked to, and answers provided from, attorney McNeil. "Because a criminal contempt proceeding is punitive in nature, potential criminal contemnors are entitled to the same constitutional due process protections afforded criminal defendants in a more typical criminal proceeding." De Castro, 957 So. 2d at 1260. "Among these constitutional safeguards are the right to be represented by counsel, . . . and the privilege against self incrimination." Pompey v. Cochran, 685 So. 2d 1007, 1013 (Fla. 4th DCA 1997).

The November 16, 2017 hearing transcript reflects that when Judge Echarte asked attorney McNeil, "who decided not to turn over the records," the court had not yet decided to convert the hearing on the respondents' Show Cause Motion for civil sanctions against Ditech into an indirect criminal contempt proceeding against attorney McNeil and her colleague. This remained the case after attorney McNeil informed the court that it was Ditech "in discussion with their legal department" that had decided not to produce the power point presentation at the midnight deposition – as evidenced by Judge Echarte's comments, "Somebody made a conscious decision to violate my order. That person or persons will soon regret that decision."

It was not until the discussion turned to the alternate ground for the respondents' Show Cause Motion – Ditech's filing Ditech's Seal Motion after the

lower court had already denied Ditech's prior motion for a protective order – that Judge Echarte first suggested that "bad things" were going to happen to attorney McNeil because the power point presentation was not produced at the midnight deposition. Immediately upon ordering that Ditech produce the material by noon that day, the trial court directed attorney Jacobs to prepare an order to show cause against the petitioners and witness Ogden for indirect criminal contempt. The trial court *then* cautioned Ms. McNeil that she had the right not to incriminate herself, as well as the right to an attorney.

Attorney McNeil argues the trial court violated her right to counsel and her right against self-incrimination at the November 16, 2017 hearing by questioning Ms. McNeil *before* warning her that she was facing indirect criminal contempt charges. Because attorney McNeil did not make any self-incriminating statements to the lower court that could support a finding of indirect criminal contempt of court against her in this proceeding, we need not reach this question because the error, if any, was harmless. Deviney v. State, 112 So. 3d 57, 79 (Fla. 2013) ("Miranda violations are subject to a harmless error analysis.").[15]

As for what transpired at the November 16, 2017 hearing, nothing in the short hearing transcript remotely suggests that attorney McNeil was responsible for

_____

[15] These circumstances again call to mind the Florida Supreme Court's warning in Pugliese of the due process pitfalls that can arise where, as here, a civil contempt proceeding converts into a criminal contempt proceeding mid-hearing.

29

the power point presentation not being produced at the cancelled, midnight deposition. Attorney McNeil never stated to the court that she had advised Ditech not to produce the power point presentation, nor did she ever imply it to the court. Attorney Jacobs even defended attorney McNeil at the hearing, representing that "[t]his was not Ms. McNeil's doing." From attorney McNeil, the trial court could not have derived any knowledge that attorney McNeil had advised Ditech not to produce the power point presentation.

### ii.    *Knowledge Derived from Attorney Jacobs*

This leaves us with attorney Jacobs. Attorney Jacobs implied at the hearing that attorney Hudson – who had no prior involvement in the case, and who had ostensibly attended the midnight deposition out of safety concerns for her colleague – was somehow responsible for Ditech's refusal to turn over the power point presentation. Attorney Jacobs gave no basis for his reasoning, which, on this record, we find amounts to mere speculation.

Furthermore, as mentioned earlier, as for whether attorney McNeil advised Ditech not to produce the power point presentation, attorney Jacobs expressly stated at the November 16, 2017 hearing that attorney McNeil had no culpability: "This was not Ms. McNeil's doing."

At most, the hearing transcript reflects that someone within Ditech's own legal department advised Ditech not to produce the power point presentation at the

cancelled, midnight deposition. This evidence, even if taken as true, cannot constitute indirect criminal contempt *by the petitioners*. See Eubanks, 636 So. 2d at 598.

In sum, we have exhaustively reviewed the record below in this case, and can find no evidence, sworn or otherwise, that either of the petitioners violated, or advised Ditech to violate, the June 29, 2017 Calendar Call Order; we are simply unable to unearth any basis for a finding of indirect criminal contempt against either of the petitioners. Therefore, under the very limited circumstances presented in this case, the Show Cause Order is invalid as to the petitioners and, therefore, the remedy of prohibition is available to them. See Aurora Bank, 166 So. 3d at 927 n.5; Tsokos, 936 So. 2d at 667-68; Eubanks, 636 So. 2d at 598; Anderson Invs. Co., 540 So. 2d at 833; Allman, 488 So. 2d at 885 n.3; State ex. rel. Gillham, 193 So. 2d at 29; Scussel, 152 So. 2d at 780.

### C. *Attorney Jacobs is a Material Witness to the Contempt Proceeding*

Normally, having concluded that the petitioners are entitled to prohibition, we would not reach the issue of whether attorney Jacobs should be disqualified as the special prosecutor to assist the court in the indirect criminal contempt proceedings. Given, however, the paucity of case law on this discrete issue – coupled with the understanding that the respondents' Second and Third Show Cause Motions remain pending in this case – we think it appropriate to provide

31

guidance to the bench and bar as to whether a lawyer, who is also a material witness in an indirect criminal contempt proceeding, may also serve as the special prosecutor in the proceeding.

To assist a trial court in conducting an indirect criminal contempt proceeding, rule 3.840 authorizes the trial court to appoint "the prosecuting attorney" or an "attorney appointed for that purpose." See Fla. R. Crim. P. 3.840(d). This authorization is not, however, without limitation. As the Fourth District has recognized, there are circumstances where trial counsel is incapable of assisting the trial court in the manner contemplated by rule 3.840(d):

> In many criminal contempt cases where the attorney for the moving party is appointed to "assist" the court under Rule 3.840(b) [sic], the attorney's involvement amounts to nothing more than calling witnesses, conducting examinations, and making argument at a contempt hearing; such involvement assists a judge who might otherwise handle the hearing "without assistance of counsel," and be in the difficult position of both a "quasi" prosecutor and judge, a situation sanctioned by contempt jurisprudence. Fla. R. Crim. P. 3.840(b) [sic]. When conducted in this way, the contempt proceeding is similar to other problem-solving exercises where the primary issues are how to rectify violations of a court order and how to secure future compliance with it.
>
> There is a great difference between an "appointed" prosecutor who develops facts to support a finding and one who misuses the appointment for injustice and oppression.

Gordon v. State, 967 So. 2d 357, 358 (Fla. 4th DCA 2007).

Here, as in Gordon, it is readily apparent that the attorney appointed to assist the trial court in conducting the indirect criminal contempt proceedings

32

would do much more than call witnesses, conduct examinations, and make argument at the hearing. Because no court reporter was present at attorney Jacobs's office on Sunday, July 23, 2017, at midnight, only those persons in attendance know precisely what transpired when attorney Jacobs called off the continued deposition of witness Ogden for Ditech's conditioning of its production of the power point presentation. As attorney Jacobs is obviously one of those persons, he is a material witness to those events.[16]

We believe Rule Regulating the Florida Bar 4-3.7's general prohibition against a lawyer acting as an advocate at a trial in which the lawyer will be a witness will, under ordinary circumstances, prevent a lawyer who is a material witness to events forming the very core of an indirect criminal contempt proceeding from also assisting the trial court as the prosecutor in those same proceedings. Further, because Florida's courts have consistently held that prohibition is an appropriate remedy to prevent a contempt hearing from proceeding before a judge who should be disqualified,[17] we similarly conclude that prohibition will lie to prevent a lawyer who is a material witness to events forming the core of an indirect criminal contempt proceeding from also serving as the

---

[16] The respondents do not address the propriety of attorney Jacobs serving as the special prosecutor at the indirect criminal contempt hearing in their consolidated response to the consolidated petition. At oral argument, however, attorney Jacobs conceded that he is a material witness to the events in question.

[17] Scussel, 152 So. 2d at 780; Castro, 650 So. 2d at 1068.

prosecutor in those same proceedings. That is especially true in the instant case where attorney Jacobs is not only a material witness; he is also the individual who has made the allegations that are contained in the Show Cause Order, and he has further demonstrated that he does not feel constrained by the trial court's directives in prosecuting this matter.

### III. Conclusion

The Show Cause Order fails to set forth an adequate factual basis for finding the petitioners in indirect criminal contempt of court. The petitioners did not violate any provision of the June 29, 2017 Calendar Call Order, which was directed at Ditech, and not the petitioners. No sworn motion, sworn affidavit or sworn testimony was provided in support of the Show Cause Order. Exhibit A, the only attachment to the Show Cause Order, is unsworn and, therefore, the order fails to comply with rule 3.840; plus, the Show Cause Order is infirm because its Exhibit A contains factual findings that were neither contained in the respondents' Show Cause Motion nor discussed at the hearing on same. The November 16, 2017 hearing transcript reveals, at most, that someone within Ditech's own legal department – and not either of the petitioners – advised Ditech not to produce the power point presentation at the cancelled, midnight deposition in possible violation of the June 29, 2017 Calendar Call Order. In sum, the record is devoid of any contemptuous conduct by the petitioners.

Moreover, because attorney Jacobs is a material witness to the underlying acts providing the factual basis for the Show Cause Order, he should have been disqualified from serving as the special prosecutor at the indirect criminal contempt proceeding.

This Court is mindful that prohibition is an extraordinary remedy that should be employed cautiously, in narrow circumstances, and in emergency situations. English v. McCrary, 348 So. 2d 293, 296 (Fla. 1977). We find this to be such a case. Indeed, what began as a routine mortgage foreclosure action based on the borrower's alleged default of a September 2010 loan modification agreement has seemingly devolved into a heated dispute over the legitimacy of Ditech's loan boarding process based on Ditech's alleged violation of a simple discovery order to produce training material upon which Ditech argues it will not even rely at trial. The petitioners find themselves caught in the middle of this dispute, facing indirect criminal contempt sanctions (and even jail time), despite there being no evidence that the petitioners are at all responsible for violating the discovery order. Accordingly, we grant the consolidated petitions for writ of prohibition, issue the writ, and order that no further proceedings be had on the Show Cause Order.

Prohibition granted; writ issued.