# Third District Court of Appeal

## State of Florida

Opinion filed November 24, 2021.
Not final until disposition of timely filed motion for rehearing.

_____

Nos. 3D21-1300, 3D21-1304, 3D21-1311, & 3D21-1320

Lower Tribunal No. 18-37059
_____

**Carrington Mortgage Services, LLC, et al.,**
Petitioners,

vs.

**Julie Nicolas, et al.,**
Respondents.


Cases of Original Jurisdiction – Prohibition.

Akerman LLP, and Nancy M. Wallace (Tallahassee); Akerman LLP, and William P. Heller (Fort Lauderdale); Akerman LLP, and Eric M. Levine (West Palm Beach), for petitioner Nathaniel Callahan; Bradley Arant Boult Cummings LLP, and Lauren G. Raines and Sara D. Accardi (Tampa); Bradley Arant Boult Cummings LLP, and Marc James Ayers and Stephen C. Parsley (Birmingham, AL), for petitioner Carrington Mortgage Services, LLC; Polsinelli PC, and Brendan I. Herbert and Henry H. Bolz IV, for petitioner The Bank of New York Mellon; Liebler, Gonzalez & Portuondo, and Adam J. Wick, for petitioner Bank of America, N.A.

Jacobs Legal, PLLC, and Bruce Jacobs; Wasson & Associates, Chartered, and Roy D. Wasson, for respondent Julie Nicolas.

Before EMAS, LOGUE and LOBREE, JJ.

LOGUE, J.

## INTRODUCTION

This proceeding, which began as a straightforward mortgage foreclosure—the borrower had stopped making payments on a negotiable note indorsed in blank—has somehow transformed into an ever-escalating battle that no longer resembles its original form.

After a contested final summary judgment was entered and no appeal taken, the Respondent borrower, Julie Nicolas, moved to set aside the judgment for fraud under Rule 1.540 of the Florida Rules of Civil Procedure. During the evidentiary hearing on that motion, the parties presented conflicting testimony regarding the identity of the current loan servicer. Without concluding the hearing, or even resolving that narrow factual dispute, the trial court signed the borrower's proposed order to show cause, charging each of the Petitioners with perjury. The order set an arraignment date and advised Petitioners that the penalties under consideration included "jail, adjudication, [and] probation."

2

Petitioners, which include the Trustee for the foreclosing trust (The Bank of New York Mellon), a non-party loan servicer (Carrington Mortgage Services, LLC), a second non-party loan servicer (Bank of America), and the non-party attorney for the Trustee (Nathaniel Callahan), each seek a writ from this court prohibiting the trial court from proceeding on an order to show cause why each Petitioner should not be held in indirect criminal contempt.

In addition to significant due process infirmities, Petitioners contend that an unresolved factual dispute of the nature involved here cannot form the basis of criminal contempt. For the reasons that follow, we grant their petitions and issue the writ.

## BACKGROUND

On October 11, 2006, Julie Nicolas borrowed $202,500 from Popular Mortgage Corporation and signed a note and mortgage. By January 1, 2016, Nicolas had stopped making payments. In the meantime, the loan had been transferred several times and ultimately made part of a package of loans securitized for sale to investors. On November 1, 2018, the Bank of New York Mellon, as Trustee for the Trust that became the owner of the loan during the securitization process, filed the instant foreclosure action.

The operative complaint alleged the Trust was "entitled to enforce the Promissory Note as the owner and holder, pursuant to Section 673.3011,

3

Florida Statutes." The note contained an indorsement in blank. In her answer, Nicolas denied this allegation and raised the affirmative defense that the Trust lacked standing. On October 29, 2020, the trial court entered a final summary judgment of foreclosure. Nicolas did not appeal that final judgment. The trial court took custody of, and canceled, the original note.

More than six months after entry of the final judgment of foreclosure, and one day before the foreclosure sale was scheduled to take place, Nicolas filed a motion under Rule 1.540 of the Florida Rules of Civil Procedure to set aside the judgment.[1] In the post-judgment motion, Nicolas sought to revive her pre-judgment claim that the Trustee lacked standing by framing the Trustee's claim of standing as fraudulent.

At a May 10, 2021 hearing, Nicolas offered the testimony of Bernard Jay Patterson as an expert "Certified Fraud Examiner." Patterson testified that the current loan servicer was Petitioner Bank of America. At a May 24, 2021 continuation of the hearing, however, an employee of Petitioner Carrington Mortgage Services, LLC, Bryan Heifner, testified that Carrington took over as the loan servicer in 2017. Petitioner Callahan was counsel for the Trustee during these hearings.

---

[1] The sale took place the following day, and the property was purchased by a third-party bidder.

Four days later, on Friday, May 28, 2021 while the hearing was suspended for thirty days to permit further discovery, Nicolas filed a motion for an order to show cause why the four Petitioners—Trustee (Bank of New York Mellon), Bank of America, Carrington, and Callahan—should not be held in criminal contempt for perjury for asserting that Carrington took over as loan servicer. The foundation for Nicolas' motion was an affidavit by Patterson, the witness who had testified at the May 10, 2021 hearing.

In his affidavit, Patterson bolstered his prior testimony by relating that he had obtained "additional documentation." His prior opinion was now further "supported" by (1) his review of a report concerning the Trustee issued by "Moody's, the ratings agency for this trust," which Patterson averred showed Bank of America still serving as the loan servicer; (2) his exchange of emails with an employee at Moody's in which the employee agreed with Patterson on this point (Patterson attached the emails to his affidavit); and (3) his analysis of a 2011 settlement agreement between the foreclosing Trustee bank and a third party that referred to Bank of America as the loan servicer. Patterson reasoned that if Carrington had taken over as loan servicer, Moody's would have known of the change.

On the same day that Patterson's supplemental affidavit was filed, Bank of America filed an affidavit in support of its own separate motion for

protective order. The affidavit was executed by an officer of Bank of America, attesting to Bank of America's transfer of the servicing rights to Carrington and attaching an October 2, 2017 agreement signed by officials from Bank of America and Carrington confirming the transfer. The affidavit reads:

> Effective October 2, 2017, BANA[2] sold all mortgage servicing rights, master or otherwise, for the Note and Mortgage to Carrington Mortgage Services, LLC. A true and correct copy of the Transfer Confirmation dated October 2, 2017, between BANA and Carrington Mortgage Services, LLC, is attached hereto as Exhibit "F".

Nevertheless, on Wednesday, June 2, 2021, two business days after Nicolas filed her motion for order to show cause, and without directing any response from Petitioners or holding a hearing, the trial court granted Nicolas' motion and signed an order to show cause that had been prepared by Nicolas' counsel. The order required the Petitioners to show cause why they "should not be held in indirect criminal contempt" and "sanctioned under the Court's inherent contempt powers for fraud on the Court."

The order states the four Petitioners "offered perjured testimony to the court during an evidentiary hearing on Defendant's Motion to Vacate Judgment Due to Fraud." It does not identify the author, date, or content of the charged perjury. Attached to it, however, was Patterson's affidavit which,

---

[2] BANA is an acronym for Bank of America, N.A.

6

while not indicating the author or date of the perjured testimony and while using the passive voice, states "[d]uring the evidentiary hearing, it was asserted that Bank of America was not the Master Servicer for this trust."

The order set an arraignment date before "the Honorable Judge Beatrice Butchko." The order further advised Petitioners that the sanctions being considered by the trial court include "jail, adjudication, [and] probation." It offered Petitioners an opportunity to plead guilty and to present evidence of "mitigating circumstances prior to any sentencing." Lastly, the order warned Petitioners that, if they do not plead guilty, "the case shall be promptly set for trial."

Each of the four Petitioners filed a separate petition, which this court consolidated on its own motion.

## JURISDICTION

This Court is "mindful that prohibition is an extraordinary remedy that should be employed cautiously, in narrow circumstances, and in emergency situations." Hudson v. Marin, 259 So. 3d 148, 166 (Fla. 3d DCA 2018) (citing English v. McCrary, 348 So. 2d 293, 296 (Fla. 1977)). Nevertheless, this Court and other courts have held that prohibition will lie to prevent a contempt proceeding from going forward in the "rare cases in which the underlying indirect criminal contempt charge is invalid." Id. at 159

7

("[P]rohibition can be invoked when the very basis of the contempt charge is an invalid one and the proceeding is in violation of the requirements of due process.").

These rare cases involve situations "when a party is about to be cited for contempt on the basis of acts which could not constitute contempt of court." Tsokos v. Sunset Cove Invs., Inc., 936 So. 2d 667, 667–68 (Fla. 2d DCA 2006); see, e.g., Aurora Bank v. Cimbler, 166 So. 3d 921, 927 n.5 (Fla. 3d DCA 2015) (issuing writ to prohibit proceedings seeking sanctions because "[r]efusing to comply with a nonparty mediator's discovery requests directed at privileged information is not contemptuous conduct"); Eubanks v. Agner, 636 So. 2d 596, 597 (Fla. 1st DCA 1994) ("[P]rohibition will lie 'when a party is about to be cited for contempt on the basis of acts which could not constitute contempt of court.'" quoting State ex rel. Gillham v. Phillips, 193 So. 2d 26, 29 (Fla. 2d DCA 1966)).

## ANALYSIS

The Petitioners raise a host of challenges to the order to show cause, including whether the order comports with due process, is improperly based on hearsay, arises from an unauthorized Rule 1.540 motion, and involves a factual dispute that is not material. While some of these issues may indeed have merit, we focus on the collective argument, made by all Petitioners, that

8

a routine dispute over a factual issue like this one, based on the type of conflicting testimony present in the record before the trial court, fails to provide a valid basis for criminal contempt.

As Petitioners accurately point out, the order to show cause does not identify the author, date, or content of the charged perjury. It clumps Petitioners together without indicating the particular action by each that could give rise to liability for contempt. Nevertheless, reading the order, the supporting affidavit, and the underlying motion together, it would appear the charged perjury consisted of the testimony of Bryan Heifner, as it was Heifner who testified that Carrington, not Bank of America, was the current servicer. While we thus proceed on the assumption that this is the conduct upon which the order to show cause is premised, we note with some curiosity that Heifner is not included in the group charged with perjury.

Because the trial court issued the order to show cause before the evidentiary hearing was completed, the record stands as follows: on one hand, Respondent Nicolas has submitted the testimony of Patterson as an expert that the current loan servicer is Bank of America. Nicolas has supported her position with the additional affidavit of Patterson. On the other hand, Petitioners have submitted the testimony of Heifner, an employee of Carrington, that the current loan servicer is Carrington. Petitioners have

9

supported this position with the affidavit of the Bank of America official and an authenticated copy of the signed confirmation reflecting Bank of America's transfer of its loan servicer rights to Carrington in 2017.

For the trial court to escalate this narrow factual dispute to a charge of perjury threatening "jail, adjudication, [and] probation" was a gross error. It was exacerbated by the inclusion of the Trustee's lawyer as a defendant-contemnor in these circumstances. It is not a crime for a lawyer to present his or her client's side of a case. The extraordinary action by the trial court threatens a chilling effect on practitioners that reverberates beyond the boundaries of the instant case.

The profound nature of the trial court's error was clearly explained by Judge (later Justice) Harry Lee Anstead in the case of Emanuel v. State, 601 So. 2d 1273 (Fla. 4th DCA 1992). In Emanuel, the Fourth District reversed a trial court that held a defendant in direct criminal contempt for testifying that he had not consented to a search. Writing for the majority, then Judge Anstead explained:

> When acting as the fact-finder at an evidentiary hearing, it is the court's responsibility to judge the credibility of the witnesses and resolve factual disputes. This is the essence of the fact finder's duty in a trial. This responsibility should rarely be mixed with the authority to find a party in contempt for false testimony. Were it otherwise, virtually every evidentiary hearing would give rise to numerous direct contempts against the witnesses

> for the losing side, and the orderly resolution of matters by evidentiary hearing would be seriously disrupted. Under [State ex rel. Luban v.] Coleman, [189 So. 713 (Fla. 1939)], <u>contempt should be reserved only for the most blatant cases in which the perjury is virtually undisputed</u>.

Id. at 1275 (emphasis added). While a judge serving as factfinder is properly discharging her role in evaluating conflicting evidence and the credibility of witnesses, a judge purporting to do the same in a contempt proceeding for perjury based on her determination of credibility falls "short of the strict standard of certainty required" to exercise the awesome power of criminal contempt for perjury. Id. at 1276. "That is why, in the ordinary situation where perjury is suspected, a state prosecution for perjury is the preferred alternative." Id. at 1275.

As explained in Emanuel, it is doubtful whether a factual dispute should ever give rise to a criminal contempt hearing for perjury: it is certainly clear that it should not under these facts. Based on the record before us, it can be said beyond peradventure that there can be no finding of criminal contempt on the part of Petitioners simply because they are maintaining that Bank of America transferred the servicing rights to Carrington. We have previously issued writs of prohibition to prevent similar escalation of civil proceedings into criminal contempt prosecutions of opposing lawyers as a litigation tactic. Hudson, 259 So. 3d at 162 (issuing a writ of prohibition where a

11

"matter morphed from a civil contempt proceeding seeking sanctions based on violation of a simple discovery order into a criminal contempt proceeding centered on then unsubstantiated claims").

Petitioners also request this Court, upon remand, to direct that the cause be reassigned to another judge, in essence asking this Court to disqualify the trial judge from further proceedings in this case.[3] "The test for determining the legal sufficiency of a motion for disqualification is whether the facts alleged would cause a reasonably prudent person to fear that he or she could not get a fair and impartial trial." Shir L. Grp., P.A. v. Carnevale, 314 So. 3d 523, 524–25 (Fla. 3d DCA 2020). We have already held that "[t]he judge's commentary concerning the credibility of the petitioner . . . , before the completion of the petitioner's direct examination or presentation of any witnesses in support of her case, is sufficient to create in a reasonably

_____

[3] We have previously directed, on our own motion, that proceedings on remand be reassigned to another judge. See, e.g., Green v. State, 84 So. 3d 1169 (Fla. 3d DCA 2012); Mirutil v. State, 30 So. 3d 588 (Fla. 3d DCA 2010); see also Betty v. State, 233 So. 3d 1149 (Fla. 4th DCA 2017); Schwartzberg v. State, 215 So. 3d 611 (Fla. 4th DCA 2017); Hampton v. State, 178 So. 3d 921 (Fla. 5th DCA 2015). While these decisions may have arisen in other contexts, the underlying rationale for such directions on remand is equally applicable in the present context: "the appearance of prejudgment must be avoided," Betty, 233 So. 3d at 1153, and the need "to preclude any perception on [Petitioner's] part that the [proceeding] may not be conducted in a completely fair and impartial manner." Mirutil, 30 So. 3d at 591 (quoting Berry v. State, 458 So. 2d 1155, 1156 (Fla. 1st DCA 1984)).

prudent person a well-founded fear that she would not receive a fair hearing before this judge." S.S. v. Dep't of Children & Families, 298 So. 3d 1184, 1185 (Fla. 3d DCA 2020) (citing Brown v. St. George Island, Ltd., 561 So. 2d 253, 257 n.7 (Fla. 1990)).

What is true for a judge's comments is even more true for a judge's actions in issuing an order to show cause. Here, although the evidentiary hearing on the issue was not complete, the trial judge issued an order to show cause why, among other things, the Petitioners should not be subject to "jail, adjudication, [and] probation" because Petitioners asserted that Bank of America was not the Master Servicer for this Trust and that Carrington Mortgage Services is in fact the Master Servicer. This action would cause a reasonably prudent lawyer or litigant to conclude that: (1) the judge had already decided Bank of America was the loan servicer; (2) any evidence offered by the Petitioners was false; and (3) the only remaining issue was whether Petitioners acted with criminal intent in offering this evidence. No other interpretation explains why the trial judge entered an order to show cause before the very factual issue in dispute (i.e., who was the servicer during the relevant time periods) had been resolved by the judge as factfinder.

In addition, the issuance of the order to show cause based on a charge of perjury would obviously cause a reasonably prudent lawyer and litigant to believe that the judge feels they have committed perjury and was therefore not inclined to believe them. Brown, 561 So. 2d at 257 ("[A] statement by the judge that he feels a party has lied in a case generally indicates a bias against the party."); see also Carnevale, 314 So. 3d at 524–25.

Accordingly, we issue the writ, quash the order to show cause under review, prohibit the trial court from proceeding further with the prosecution for contempt therein, and remand for further proceedings before another judge consistent with this opinion.

Petitions granted; writ issued, and order quashed.